[Civ. No. 5861.   Third Appellate District.—November 6, 1937.]

Z. HAGGLUND, Respondent, v. CHARLES NELSON, Appellant.

Yale S. Kroloff for Appellant.

W. Coburn Cook for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment for $655.24 which was rendered against him in a suit for injuries received by the plaintiff in a railroad crossing casualty. The plaintiff was riding as a guest in the defendant's automobile. The cause was based on alleged wilful misconduct of the defendant in attempting to cross the railroad track ahead of an approaching passenger train. The case was tried by the court sitting without a jury. Findings were adopted against the defendant. From the judgment which was accordingly rendered this appeal was perfected. The sole ground for a reversal is the alleged insufficiency of the evidence to show wilful misconduct.

The defendant and his wife resided on the westerly side of the Southern Pacific railroad track in the suburb of Turlock. They owned the Plymouth sedan automobile which was involved in this accident. It was in good mechanical condition, having been driven only 9,000 miles. The brakes were in perfect order. The defendant was in his normal good state of health and mind. He understood perfectly how to drive an automobile, having operated automobiles for twenty years. He was familiar with the railroad crossing where the accident occurred, having frequently used it for several years past. He also knew that a passenger train from the north was due to arrive at Turlock daily at the noon hour.

On January 6, 1936, the plaintiff, who is a neighbor of the defendant, was invited to ride with him as a guest in his automobile to Modesto, which is about ten miles northerly from Turlock on the easterly side of the Southern Pacific railroad track. They left home about 9 o'clock in the morning. It was a clear day. There was no rain. In going to and coming from Modesto the plaintiff sat on the front seat of the automobile at the right-hand side of the defendant, who operated the car. The defendant's wife and a young couple who were to be married the following day sat in the rear seat. The Southern Pacific railroad track runs from Stockton straight through Modesto to Turlock and thence southerly over an almost level open country. On the morn-

ing of the accident, the defendant drove his automobile along a graveled country road northerly from Turlock about one mile, which was his usual course, and then turned at a right angle across the railroad track, thence northerly to Modesto.

After completing their shopping that morning the group left Modesto shortly before noon. They sat in the same positions occupied by them in the automobile on their trip to Modesto. The plaintiff sat by the side of the defendant, who operated the car. They drove southerly from Modesto along the public highway, which parallels the railroad track about a hundred feet easterly thereof, to the point about a mile northerly from Turlock. Here the defendant turned his machine at a right angle to cross the track along the graveled country roadway. At the crossing, the railroad track is elevated several feet above the level surrounding land. The roadway approaches the track from either side at a slight grade. There were railroad crossing signs at that point. The railroad right-of-way is open and unobstructed in both directions from the highway crossing for a distance of several miles. The right-of-way is forty-two feet in width on the easterly side of the railroad. Along the easterly margin of the right-of-way, where the highway crosses the railroad track, there is a line of telegraph poles, a fence and some weeds. Mr. Nelson testified that he was perfectly familiar with that railroad crossing; he knew the train schedule and realized that a passenger train was due from the north at that time of day; he knew that it was then about noon. It was a distance of seventy-five feet from the public highway to the railroad track at that point. There was nothing to obscure a clear view of the track both north and south of the crossing, except the line of telegraph poles and the fence. The track was elevated above the surrounding surface of the land and the fence should not have obscured the view of an approaching train. The defendant reduced the speed of his car to about ten or fifteen miles an hour. There is evidence that he could have stopped the machine in a space of less than twenty feet. He made no effort to do so. When the automobile passed the line of poles, forty-two feet easterly from the track, the plaintiff saw the passenger train at a distance of about three hundred feet approaching from the north at a high rate of speed. The plaintiff testified: "As soon as I got past these posts, and little weeds, . . . I saw

the train and then I hollered 'the train is coming' a little
bit excited, . . . and then I looked back and looked at Nelson
and he seemed to look at the train too; . . . and he didn't
do anything, and kept on the same speed, maybe a little bit
increased; but when we got pretty close so I was pretty sure
he was not going to stop, I hollered again, 'step on it', and I
don't know whether he did or not, but the car didn't pick up
very good, and we were just a foot and a half shy of getting
across''. The locomotive engine struck the rear end of the
automobile. The three passengers who rode in the rear seat
were killed, and the plaintiff was injured.

We are of the opinion the evidence in this case shows
wilful misconduct on the part of the defendant in recklessly
attempting to beat a rapidly approaching passenger train to
the crossing with full knowledge that his conduct was likely
to result in a collision and injury to his guests. The facts
which constitute wilful misconduct are that the defendant,
who was perfectly familiar with the railroad crossing, and
knew that a train was then due from the north, after having
been warned of an approaching train when his machine
was forty feet from the track, and having apparently seen the
train, or by the exercise of his faculties and ordinary caution,
should have seen the train, deliberately attempted to beat the
passenger train to the crossing, without attempting to stop
his automobile, which he could have easily done. With a pas-
senger train in full view three hundred feet away approach-
ing at a high rate of speed it was wanton and reckless
disregard of the consequences of his conduct for the defendant
to persist in trying to drive his automobile some forty feet
across the track ahead of the train. He was familiar with
the crossing. He knew it was train time. He disobeyed the
crossing sign to ''stop, look and listen'' for the train. His
attention was called to the near approach of the train, and
he must have seen it in ample time to have stopped his ma-
chine. Such conduct may not be said to amount to mere
lack of judgment. It was a wilful and reckless disregard
for human life. Under such circumstances it was the province
of the trial court to determine whether such conduct was the
result of a mere mistake of judgment, or whether on the con-
trary it constituted wilful misconduct on the part of the
driver of the machine. With that province we may not in-
terfere under the facts of this case.

In the case of *Avery* v. *Thompson,* 11 Me. 120 [103 Atl. 4, Ann. Cas. 1918E, 1122, L. R. A. 1918D, 205], upon facts remarkably similar to those of the present case, it was held that the driver of an automobile was guilty of "reckless and wilful misconduct".

Proof of wilful misconduct depends upon the facts of each particular case. (*Candini* v. *Hiatt,* 9 Cal. App. (2d) 679, 683 [50 Pac. (2d) 843].) The definition of wilful misconduct of the driver of an automobile which results in the death or personal injury of a guest who is riding in the machine, as that term is used in section 403 of the California Vehicle Code, is now well understood. It is clearly and concisely stated in *Meek* v. *Fowler,* 3 Cal. (2d) 420 [45 Pac. (2d) 194, 197]. In that opinion the court quotes with approval from the case of *Turner* v. *Standard Oil Co.,* 134 Cal. App. 622, 626 [25 Pac. (2d) 988], as follows:

" 'Wilful misconduct' within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, *express or to be implied,* that an injury to a guest will be a probable result."

Quoting further with approval from the case of *Howard* v. *Howard,* 132 Cal. App. 124 [22 Pac. (2d) 279], the opinion in the Meek case says:

"To constitute wilful misconduct, there must be actual knowledge, *or that which in the law is esteemed to be the equivalent of actual knowledge,* of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury."

The court concludes, in the Meek case, with the statement that:

"Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, *or the intentional doing of an act with a wanton and reckless disregard of its possible result.*"

In the case of *Norton* v. *Puter,* 138 Cal. App. 253, 258 [32 Pac. (2d) 172], in which case a hearing was denied by the Supreme Court, the term is similarly defined as follows:

"Wilful misconduct depends upon the facts of a particular case and necessarily involves deliberate, intentional *or wanton*

*conduct* in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom.''

■ Accepting the foregoing quotations as adequate definitions of the term under consideration, it follows that one may be guilty of wilful misconduct in the operation of an automobile, not only when he performs an act, or omits to do so, with the deliberate intent to injure his guest, but he may also be guilty of such culpable conduct when he knowingly performs an act or fails to do so with such wanton and reckless disregard of consequences that he knows, or is charged with knowledge that an injury or death will probably result from his conduct.

■ In the present case we are satisfied the defendant did not drive his automobile directly in front of the rapidly approaching passenger train with the deliberate intention of injuring his guest, but we are convinced that he did act with wanton and reckless disregard of the consequences of his conduct with knowledge, or the possession of facts which were equivalent to actual knowledge, that injury to his guest was likely to occur. Such conduct renders him guilty of wilful misconduct.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 3, 1938.