[Civ. No. 12771. Second Dist., Div. Three. May 5, 1942.]

HARRY VAN FLEET et al., Appellants, v. DAVID B. HEYLER, Respondent.

722

Haight, Trippet & Syvertson, Arthur L. Syvertson, and Randolph L. Shinn for Appellants.

Tripp, Penney & Callaway, Hulen C. Callaway and D. Paul White for Respondent.

SHAW, J. pro tem.—The plaintiffs were guests of defendant in his automobile, on a trip from Beverly Hills to a fishing location on the Owens River. While defendant was

driving the automobile, it ran off the pavement and turned over. As a result of this accident both plaintiffs received serious personal injuries, for which they sue in this action. The complaint is based on wilful misconduct of defendant. The answer denies such misconduct and alleges contributory negligence on the part of each plaintiff. After trial by a jury, a verdict for defendant was returned, upon which a judgment in defendant's favor was entered. Both plaintiffs appeal from this judgment.

It is not contended by plaintiffs that the evidence does not support the verdict, their whole claim of error being directed at the instructions to the jury. On the other hand, defendant contends that the evidence does not show wilful misconduct on his part, and is thus insufficient to support a verdict against him, if one had been found, and that hence any error regarding instructions cannot be regarded as prejudicial and affords no grounds for reversal. If defendant's premise be conceded, the conclusion which he draws is undoubtedly correct. (*Young* v. *Vallejo etc. Co.*, (1927) 202 Cal. 638, 641 [262 Pac. 327].) Under section 403 of the Vehicle Code, either wilful misconduct or intoxication of a driver is necessary to render him liable for injuries to a guest, and intoxication is not alleged or shown here. We therefore examine the evidence to determine whether it would support a verdict in favor of plaintiffs on the issue of wilful misconduct, before considering their contentions; and in passing upon this question we must, of course, take the view of the evidence most favorable to plaintiffs, resolving all conflicts and all conflicting inferences in their favor, so far as is reasonably possible.

The plaintiff, William Clinton Van Fleet, is the 12-year-old son of the plaintiff, Dr. Harry Van Fleet, and the term "plaintiff" will be used hereinafter to designate Dr. Van Fleet only, except as otherwise indicated. The parties to the action left Beverly Hills at 4:15 p. m. on October 7, 1938, accompanied by Dr. Van Fleet's wife and by the defendant's wife and 13-year-old son. Their route led them through Palmdale, Mojave, Red Rock Canyon, Lone Pine and Independence to the scene of the accident, which occurred at or about 9 p. m., at a point 8 miles north of Independence. A short distance north of Palmdale defendant drove his car at a speed of 100 miles per hour for a short distance. The plaintiff and Mrs. Van Fleet remonstrated at this and defendant reduced his speed to between 70 and 80 miles per hour. Night

overtook them at Mojave. Beyond there the defendant drove so fast through some dips in the road as to make the plaintiff "concerned about it," and at a very bad dip "we were all thrown off the seat." Defendant then slowed down, and "the driving was conservative," as plaintiff put it, to Lone Pine, a distance of 90 miles. They reached Lone Pine at 8 p. m. and stopped there for dinner. On leaving Lone Pine, plaintiff offered to drive for the rest of the trip, but the defendant insisted on driving. They reached Independence, 16 miles north of Lone Pine, without mishap. The road from Independence to the scene of the accident had a two-lane pavement 20 feet wide, with a wavy surface, rough in places, and soft shoulders, and along it were numerous signs bearing the words, "soft shoulders." The defendant knew the shoulders were of dirt. After leaving Independence the defendant started to increase his speed, raising it to 80 miles per hour. As they rounded a curve at this speed, a chuck wagon without lights, going in the same direction, suddenly loomed up ahead. Plaintiff yelled, "Dave, cut it down; this is a curve," and defendant put on his brakes, pulled his car abruptly to the left, but stayed on the pavement, and got safely past the chuck wagon. Defendant testified that at this time he felt "uncomfortable." The accident occurred 3 or 4 minutes later. For a couple of miles after the chuck wagon was passed, the speed was "reasonable," according to plaintiff; then defendant increased his speed until it reached 82 miles per hour. Going at this rate he passed a "slight turn" which was 8-10ths of a mile south of the scene of the accident. He maintained a speed between 80 and 90 miles per hour until he reached the scene of the accident. He admitted after the accident that he had been going "85." After passing the curve last mentioned he approached on a straightaway a place of habitation referred to as the "Circle Dot Pack Station." At this time the moon was obscured by clouds, but the lights of the pack station were visible, some of them streaming out of the front door. The defendant saw the lights, and testified that they were bright enough to prevent him from seeing sooner than he did the pack train which occasioned the accident. As the automobile was about opposite the pack station, a train of pack mules crossing the road from west to east became visible, 100 to 150 feet ahead, the last one being about in the center of the pavement, leaving the left half of the pave-

ment clear. The defendant applied his brakes, swerved his car to the left with a skid, passed the mules without hitting them, but got the wheels of his car off the pavement upon the shoulder; then the car shot across to the right, ran off the pavement on that side, hit a ditch in which a little stream crossed the road, and turned over.

From all these facts and circumstances we think the jury, under proper instructions, could reasonably have concluded that the defendant was guilty of wilful misconduct proximately causing the accident. They might easily have believed that defendant was " 'knowingly flirting with danger' without necessity compelling him to take the chance"—a sort of conduct which has several times been held to be wilful misconduct. (*Rawlins* v. *Lory,* (1941) 44 Cal. App. (2d) 20, 24 [111 P. (2d) 973] ; *Francesconi* v. *Belluomini,* (1938) 28 Cal. App. (2d) 701, 705 [83 P. (2d) 298] ; *Chandler* v. *Quinlan,* (1938) 25 Cal. App. (2d) 646, 648 [78 P. (2d) 235] ; *Berryman* v. *Quinlan,* (1938) 29 Cal. App. (2d) 608, 610 [85 P. (2d) 202] ; *Parsons* v. *Fuller,* (1937) 8 Cal. (2d) 463, 468 [66 P. (2d) 430].)

Defendant contends, however, that the only circumstance to be considered in support of this conclusion is his speed, and that speed alone does not amount to wilful misconduct. Our views on this point are well expressed in an opinion by Judge Bishop of the Appellate Department of the Superior Court of Los Angeles County, in *People* v. *Nowell,* (1941) 45 Cal. App. (2d) (Supp.) 811 [114 P. (2d) 81]. There the question for decision was whether the defendant was shown to be guilty of "reckless driving," as defined in section 505 of the Vehicle Code. The court held such driving to be the same thing as the wilful misconduct mentioned in section 403 of the Vehicle Code, which we now have under consideration, "so far as they are concerned with the state of mind of the driver whose conduct is in question," and extensively reviewed the authorities on wilful misconduct, reaching conclusions which are satisfactory to us. We quote from that decision as follows (pp. 813 and 814) : "Of necessity, when referring to the speed of an automobile, there is involved the highway on which it travels, with its width, surface and the presence or lack of traffic upon it. There is involved, too, the factor of visibility ; was the car driven before or after dark? When considered in relation to these matters mere speed, without other acts, may demonstrate wilful misconduct or that the

driving is reckless. . . . [The court] in *Fisher* v. *Zimmerman*, (1937) 23 Cal. App. (2d) 696 [73 P. (2d) 1243], had before it a case where a speed of 85 miles an hour was the only misconduct involved. The court noted, however, that the driving was at night (as it was in our case); the highway had soft shoulders (a circumstance of no consequence if the driver keeps on the roadway); and there was another car upon the highway. The court stated (pp. 701-702): 'It is generally held that mere speed, of itself, does not constitute wilful misconduct. This may not always be true. There may be a point at which the speed becomes so excessive, the danger of injury to the passenger so probable, that such extreme speed alone might be held to be wilful misconduct.' The court continued its treatment of the subject by quoting from *Hall* v. *Mazzei*, (1936) 14 Cal. App. (2d) 48 [57 P. (2d) 948, 950]: ' "We do not wish to be understood as holding that mere speed may never constitute wilful misconduct if indulged in under certain conditions. Wilful misconduct, like negligence, must relate to the time, place, person and surrounding circumstances, and must be measured by them. Excessive speed under some circumstances may amount to negligence, under others to gross negligence, and under still others to wilful misconduct." ' "

In this case speed was not "alone." The accident occurred at night, while the moon was hidden by clouds. The pavement was only 20 feet wide and had soft shoulders and a wavy, sometimes rough, surface. While the scene of the accident was in a remote, comparatively uninhabited part of the country, roads in such regions are not necessarily untraveled. We may take judicial notice of the facts that this particular road is the main highway from Los Angeles to Reno and other parts of Nevada, that it leads to many fishing, hunting and camping resorts, that the fishing season was still open at the time of the trip, and that a considerable amount of traffic passes over the road. Just a few minutes before the accident defendant had had a definite warning that the road was not entirely empty, and that the other occupants did not all carry lights, when he came suddenly on the unlighted chuck wagon and had to make an abrupt turn to avoid it. Before him were the lights of the pack station as a further indication that the vicinity was inhabited and persons or objects might be on the road. In spite of all this he accelerated his speed to 82 or more miles per hour soon after passing

the chuck wagon and maintained that speed or increased it to 85 miles per hour; not slowing down at all as he approached an obvious habitation and lights that interfered with his vision. This speed was nearly twice the speed (45 miles per hour) which the Vehicle Code then fixed as the prima facie maximum limit of reasonable speed; and although the code did not declare speed above this limit to be even negligence as a matter of law, such speed is a matter to be considered on the question of misconduct, and in connection with other circumstances may support a finding of wilful misconduct.

Defendant further contends that there is no evidence "of a frame of mind of the defendant of a character to constitute 'wilful misconduct.' " There are conflicting statements in the decisions which undertake to define "wilful misconduct." But on consideration of the cases on the subject, and reconciling them as far as possible, we find them to divide "wilful misconduct" into two distinct lines of action, either of which will render a driver liable to his guest for its results, as follows: first, "the intentional doing of something with a knowledge that serious injury is a *probable* (as distinguished from a possible) result"; and, second, "the intentional doing of an act with a wanton and reckless disregard of its *possible* result." Both of these statements are quoted from *Howard* v. *Howard,* (1933) 132 Cal. App. 124, 129 [22 P. (2d) 279] (emphasis by the court there), and have been approved in the many later cases reviewed in *People* v. *Nowell,* 45 Cal. App. (2d) (Supp.), pp. 815 and 816, [114 P. (2d) 81].

The first alternative stated in *Howard* v. *Howard, supra,* doing an act with knowledge of its probable results, etc., is qualified by the cases to this extent, that the knowledge may be either express or implied. (*Turner* v. *Standard Oil Co.,* (1933) 134 Cal. App. 622, 626 [25 P. (2d) 988]. This case is approved on this point in many later cases, including *Meek* v. *Fowler,* (1935) 3 Cal. (2d) 420, 425 [45 P. (2d) 194]; *Weber* v. *Pinyan,* (1937) 9 Cal. (2d) 226, 233 [70 P. (2d) 183, 112 A.L.R. 407]; *Robertson* v. *Brown,* (1940) 37 Cal. App. (2d) 189, 194 [99 P. (2d) 288]; *Stacey* v. *Hayes,* (1939) 31 Cal. App. (2d) 422, 426 [88 P. (2d) 165]; *Francesconi* v. *Belluomini,* (1938) 28 Cal. App. (2d) 701, 703 [83 P. (2d) 298]; *Gimenez* v. *Rissen,* (1936) 12 Cal. App. (2d) 152, 157 [55 P. (2d) 292]; *Hagglund* v. *Nelson,* (1937) 23 Cal. App. (2d) 348, 352 [73 P. (2d) 265]; *Haas* v. *Jones,* (1938) 29 Cal. App. (2d) 650, 652 [85 P. (2d) 579]; and

*Rawlins* v. *Lory,* (1941) 44 Cal. App. (2d) 20, 24 [111 P. (2d) 973].) The same rule has been expressed by use of the words ''actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge.'' (*Parsons* v. *Fuller,* (1937) 8 Cal. (2d) 463, 468 [66 P. (2d) 430] ; *Porter* v. *Hofman,* (1938) 12 Cal. (2d) 445, 448 [85 P. (2d) 447] ; *Stacey* v. *Hayes, supra; Howard* v. *Howard, supra;* and other cases referred to in those last cited.) In *Stacey* v. *Hayes, supra,* this thought is amplified by the statement that ''The probability of injury to the guest from such act or omission must have been an apparent consequence to a man of ordinary prudence and intelligence.'' This language was quoted in *Rawlins* v. *Lory, supra,* with the further comment that ''In determining whether the circumstances are sufficient to disclose implied knowledge of such probability, an external standard is applied'' and it was held by applying this ''external standard'' that the defendant there was charged with knowledge of the probable consequences of his conduct, such consequences being apparent to any person of ordinary prudence. This standard was applied in *Jones* v. *Hathway,* (1937) 22 Cal. App. (2d) 316, 320 [70 P. (2d) 681], where the court said that ''as a presumably reasonable man, had he exercised due care, defendant must have known, or must have been conscious of and appreciated the fact that to drive . . . [as he did] was likely to result in injury to plaintiff.'' The same view is set forth in the Restatement of the Law of Torts, in comment c. appended to section 500, as follows: ''In order that the actor's conduct may be reckless, it is not necessary that he himself recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament or to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct.'' (p. 1295.)

Our attention has been particularly called to the following quotation from *Porter* v. *Hofman,* (1938) (12 Cal. (2d) 445, 448 [85 P. (2d) 447]), a misconduct case: ''Before liability arises there must be shown actual knowledge, or its equivalent, on the part of the defendant of peril to be apprehended coupled with a conscious failure to act to the end of averting injury.'' The latter part of this

sentence cannot have been intended to take away the effect of the previous reference to the "equivalent" of actual knowledge, for in the next preceding paragraph we find the same reference, and also an approving quotation from another case of this expression of the same thought: "that which in the law is esteemed to be the equivalent of actual knowledge." In other words, even if some logical inconsistency can be found between the two parts of the sentence first quoted, the latter part of it, when considered with all the other parts of the opinion, does not carry with it the implication that actual knowledge by the driver of impending danger is necessary to constitute wilful misconduct. It means no more than this statement from *Stacey* v. *Hayes,* (1939) 31 Cal. App. (2d) 422, 426 [88 P. (2d) 165], (in which a hearing was denied by the Supreme Court a few months after the decision of the Porter case): "Though there need be no actual conscious intent to injure the guest, the act done or the omission made must be intentional. The probability of injury to the guest from such act or omission must have been an apparent consequence to a man of ordinary prudence and intelligence." ▮ In the case at bar the jury could have found that when the defendant failed to slow down as he approached the pack station, as well as when he increased his speed just before that time, he acted consciously and intentionally and that the probability of injury to his guests under the then existing circumstances must have been apparent to a man of ordinary prudence and intelligence.

▮ On the question of intent, defendant contends, quoting from *Walker* v. *Bacon,* (1933) 132 Cal. App. 625, 627 [23 P. (2d) 520], that "Wilful misconduct refers to intentional acts, that is, acts designed to bring about the result involved in the suit," and argues further that because his own family was in the car he could not have had such an intent and was therefore not guilty of wilful misconduct. While the presence of a driver's family or friends in the car with him is a fact to be considered in determining his state of mind, it is by no means conclusive on the subject. In many of the cases where drivers have been held guilty of wilful misconduct, family or friends, or both, have been among their guests. The statement quoted by defendant from *Walker* v. *Bacon, supra,* appears in the opinion of only one judge, not concurred in by the other two, who joined in the decision for other reasons, and is not a correct statement of the law. On the contrary, it

is implicit in the authoritative definitions of "wilful misconduct," and is also now settled by positive holdings that an intent to injure anyone is not a necessary ingredient of wilful misconduct. (*Wright* v. *Sellers*, (1938) 25 Cal. App. (2d) 603, 613 [78 P. (2d) 209]; *Rawlins* v. *Lory*, (1941) 44 Cal. App. (2d) 20, 24 [111 P. (2d) 973]; *Hagglund* v. *Nelson*, (1937) 23 Cal. App. (2d) 349, 353 [73 P. (2d) 265], p. 353; *Stacey* v. *Hayes*, (1939) 31 Cal. App. (2d) 422, 426 [88 P. (2d) 165]; *Hoffart* v. *Southern Pac. Co.*, (1939) 33 Cal. App. (2d) 591, 602 [92 P. (2d) 436].)

■ Plaintiff contends that many of the instructions on the subject of wilful misconduct are erroneous. We find that several of them are not entirely consistent with the foregoing discussion of that term, but since a new trial must be had, at which the instructions can be made to conform to the law on this point as above stated, it is not necessary to discuss in detail all those complained of. One of them, given at defendant's request, reads as follows: "There can be no wilful misconduct unless the defendant himself realized that there was a probability, as distinguished from a mere possibility, of injury to the occupants of his car from his conduct. Even proof of such probability of injury will not alone establish such realization on his part. There must be a conscious disregard of probable consequences. You may, however, consider all of the surrounding circumstances in ascertaining such realization." This instruction was erroneous in at least two respects. By making it a condition of liability that defendant himself "realized" the probable consequences of his conduct, it withdrew from the consideration of the jury "implied knowledge" on defendant's part, that is, the possible inference that a man of ordinary prudence and intelligence would have realized those probable consequences, even though defendant himself did not, and thus ran counter to the first branch of the definition of wilful misconduct, as above stated; and by excluding from consideration the possibility of injury to a guest, and defendant's reaction thereto, it contravened the second branch of that definition.

■ Another instruction, given at defendant's request, reads: "The speed at which a vehicle travels upon a highway, considered as an isolated fact and simply in terms of so many miles an hour, is not proof even of negligence. Under modern conditions with improved hard-surfaced highways and high speed automobiles, traveling at a high rate of speed is not

necessarily unreasonable. Whether it is reasonable or unreasonable depends upon consideration of the character of the highway and country which is being traversed as well as all other surrounding circumstances. Nor will a mere finding of unreasonableness justify a finding of wilful misconduct, since unreasonableness alone only constitutes negligence, and not wilful misconduct." This and other instructions are criticized as being comments on the weight of the evidence. An instruction having that effect is not necessarily erroneous, since the adoption in 1934 of the amendment to section 19, article VI of the Constitution authorizing the court to "make such comment on the evidence . . . as in its opinion is necessary for the proper determination of the case." None of the cases cited by plaintiffs on this point gave consideration to this amendment, and with one or two exceptions they were decided before its adoption. It does not appear necessary here to determine the exact meaning and effect of the amendment as applied to civil cases, but it may be suggested that if the trial court informs the jury that each of several facts mentioned is insufficient alone to support a particular finding, it ought to consider the possibility that all of the facts, taken together, might have a greater probative value and afford support for such finding; and if such is the case fairness would require that the jury be so advised. ▪ The instruction last quoted declares that "unreasonableness alone only constitutes negligence, and not wilful misconduct." To this proposition we cannot agree. Misconduct is often, if not always, unreasonable. Even if the declaration is to be limited by its context to speed, we do not agree that speed can never be so unreasonable as to constitute misconduct. See quotations above from *People* v. *Nowell,* (1941) 45 Cal. App. (2d) (Supp.) 811 [114 P. (2d) 81].

▪ At defendant's request the court gave the jury an instruction on the duty of a person confronted with sudden peril, as follows: "You are further instructed that if a driver of a vehicle is confronted with a set of circumstances which call for quick action, without time for deliberation, and he uses his best judgment and follows the course of action which seems to him best suited to prevent a collision, he cannot even be found to be negligent, nor guilty of wilful misconduct, simply because he did not do what some other person might have done if placed in the same position and confronted with the same set of circumstances.

"If you therefore find that defendant David Heyler was suddenly confronted with a situation of imminent peril, and that he used his best judgment and followed the course of action which seemed to him best suited to prevent a collision you must find against the plaintiffs and in favor of the defendant David Heyler. In such a situation you must find in the defendant's favor even should you determine that there was negligence on his part as a contributing cause to the sudden peril confronting him for, as I have instructed you, mere negligence is insufficient to establish liability on his part."

As a statement of the sudden peril rule this instruction is erroneous. It excuses the defendant if he used *his* best judgment and followed the course of action which *seemed to him* best suited to prevent a collision. ▉ One who is subject to this rule is required to act as a reasonably prudent person would act under similar circumstances. (19 Cal. Jur. 598; *Mortensen* v. *Fairbanks*, (1934) 1 Cal. (2d) 489, 492 [35 P. (2d) 1030].) ▉ The instruction sets up quite a different standard. It also fails, as a statement of this rule, in declaring that the rule must be applied even though defendant was negligent in a manner contributing to the peril. ▉ It is an essential part of the rule that one claiming its benefit be without such negligence. (19 Cal. Jur. 598; *Mortensen* v. *Fairbanks, supra.*)

▉ The latter deviation from the rule probably resulted from an effort to apply it to a case of wilful misconduct. This lights up the fundamental error of the instruction, which is that the rule itself is one applying to negligence cases, and has nothing to do with wilful misconduct, which is something more than negligence, however gross. The plaintiffs do not contend here and, as far as we can discover, did not contend at the trial, and there is nothing in the evidence to suggest, that the defendant's actions after he was confronted by the emergency of the sudden appearance of the pack train, amounted to wilful misconduct. But had any such question been raised, it could not have been answered by application of the sudden peril rule, and any instruction upon it would have been unnecessary, confusing and improper.

▉ The vice of this instruction is aggravated by the fact that its second sentence, appearing at the beginning of its second paragraph, is in effect a formula instruction. It directs the jury that if defendant was confronted by a sudden peril and

used his best judgment to extricate himself and his guests, they *must* find in his favor. A driver whose wilful misconduct has brought his guest into a position of danger cannot escape liability for the results of his conduct by using his best judgment or even by acting as an ordinarily prudent man, after the peril is upon him, even though it comes on him suddenly as the culmination of his misconduct. Such action would indicate merely repentance, which, while it may mitigate punishment, never tolls guilt.

 In this connection the court also instructed the jury, at defendant's request: "On the issue of wilful misconduct, if you find that the accident occurred while defendant was endeavoring to avoid a collision, such circumstances must be considered in defendant's favor." We have some difficulty in determining the precise signification here of the last six words. The jury might have understood them as a direction to return a verdict in defendant's favor; and if so regarded they are manifestly erroneous and prejudicial. For the reasons already stated this instruction should not have been given, whatever the meaning of the last part of it.

 We also find error in the following instruction, given at defendant's request: "Even if you find that this accident was proximately caused by wilful misconduct of defendant, plaintiffs are not entitled to recover if you find that they knew, or reasonably should have known of the alleged misconduct and had reasonable opportunity to have protected themselves from injury by leaving the car or by preventing defendant either from operating the car at all or in the manner alleged, and yet failed to avail themselves of such opportunity." The effect of this is that the plaintiffs must have left the car if they had reasonable opportunity to do so. In view of the undisputed fact that such an opportunity had presented itself to them when they stopped for dinner at Lone Pine, which they left half an hour or less before the accident, and the further fact, testified to by Dr. Van Fleet, that he had complained of defendant's driving before that time, the jury may have concluded, in the light of this instruction, that plaintiffs could not recover because they continued to ride, with defendant driving, beyond Lone Pine. The true rule on this point is not that a guest must, where he knows the driver's conduct is improper, leave the car merely if he has reasonable opportunity to do so, but that he must leave it, a reasonable opportunity being afforded, if a person in the exercise of ordinary

care would do so under the circumstances. (*Shields* v. *King,* (1929) 207 Cal. 275, 278 [277 Pac. 1043]; *Dowd* v. *Atlas T. & A. Service Co.,* (1921) 187 Cal. 523, 529 [202 Pac. 870]; *Curran* v. *Earle C. Anthony, Inc.,* (1926) 77 Cal. App. 462, 471 [247 Pac. 236]; see, also, *Lindemann* v. *San Joaquin Cotton Oil Co.,* (1936) 5 Cal. (2d) 480, 507 [55 P. (2d) 870]; *McKinley* v. *Dalton,* (1932) 128 Cal. App. 298, 304 [17 P. (2d) 160].) Here it appeared that, although Dr. Van Fleet had objected to defendant's driving on the earlier part of the trip, defendant had driven in a manner satisfactory to him for the last 90 miles before dinner; and in view of that fact and the other circumstances of the case the jury, if properly instructed, could reasonably have found that plaintiffs were not negligent in continuing in the car.

On the points covered by some of the instructions which we hold erroneous, other instructions correctly stating the law were given at plaintiffs' request, and defendant claims that by reason thereof the errors, even if we find them to be such, need not lead to a reversal. But this is not a case where all the instructions, considered and construed as a whole, can be resolved into a correct and harmonious statement of the law. There is here direct and positive conflict between the differing sets of instructions. In such a case the correct instructions do not cure the error of those which are wrong, for it is impossible to ascertain which were followed by the jury. (*Westberg* v. *Willde,* (1939) 14 Cal. (2d) 360, 371 [94 P. (2d) 590].) Nor is the situation altered by the fact, to which defendant calls our attention, that the court further instructed the jury to do what is also our duty, viz: to consider all the instructions together as a whole and harmonize them if possible. Neither the jury nor this court can harmonize positively conflicting instructions based on fundamentally different theories of the law.

The judgment is reversed.

Schauer, P. J., and Wood (Parker), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 2, 1942.