[Civ. No. 7457.   Third Dist.   May 24, 1948.]

MILDRED ALLEN et al., Respondents, v. CLAYTON W. ROBINSON et al., Appellants.

Russell A. Harris for Appellants.

J. B. Freeman for Respondents.

ADAMS, P. J.—This is an appeal from a judgment entered after a jury verdict in favor of plaintiffs Mildred Allen and her 15-year-old daughter, June Allen, which awarded damages to plaintiffs for injuries sustained by them while riding as guests in an automobile owned by defendant Melvin W. Robinson and driven by his 17-year-old son, defendant Clayton W. Robinson, with his father's consent, which injuries were attributed to wilful misconduct on the part of Clayton W. Robinson which resulted in a collision of his car with another at an intersection. On this appeal from the judgment three grounds for reversal are urged, the first that the evidence is insufficient to show wilful misconduct on the part of Clayton W. Robinson; the second that plaintiffs assumed the risk of injury by riding with said defendant under the circumstances of the case; and the third, that plaintiffs were guilty of negligence which contributed proximately to their injuries.

The evidence in the case, which appellants concede must, on this appeal, be considered in the light most favorable to plaintiffs, shows that on the evening of September 26, 1946,

between 6 and 6:30 p. m., Clayton Robinson, who for the sake of brevity will hereinafter be referred to as the appellant, called at the home of plaintiffs with whom he was already intimately acquainted. Mrs. Allen thereupon requested him to drive her and her daughter to the home of a Mr. and Mrs. Gimlen who resided at the north end of Sanguinetti Lane in rural Stockton, and, on the way, to stop at an address on Grant Street. Appellant agreed and the parties left the Allen home, all three occupying the one seat of appellant's Ford roadster. On the way to the Grant Street address, and while traveling on Market Street in the city of Stockton, appellant began racing with another car, and traveled at the rate of from 45 to 50 miles per hour, first the one and then the other car surging ahead. During this race Mrs. Allen requested appellant to slow down, but he disregarded her request. They arrived at the Grant Street address without further incident, whereupon Miss Allen alighted to perform her errand, after which the parties resumed their way to Sanguinetti Lane, their course taking them along Wilson Way to Harding Way and thence to Sanguinetti Lane. On Wilson Way appellant traveled "pretty fast"—45 to 50 miles per hour—and as they approached a red light Mrs. Allen again requested appellant to slow down. He disregarded this warning until he was almost upon a car ahead of him, when he applied his brakes and skidded to a stop. Thereafter they pursued their way along Wilson Way to its intersection with Harding Way where traffic signals were in operation. Appellant's conduct at this point was described by Jesse Gunkel, who was waiting in his car for a change of lights, as follows: "Well, there was a Model A roadster pulled in to the right on us, crowded in, as soon as the light changed, why, he left out just like he was going to a fire or something . . . he whipped around the other cars. . . ." Shortly thereafter this witness reached the scene of the accident; and he testified that the Ford roadster above referred to was the one involved in the collision.

Leaving Wilson Way appellant entered Sanguinetti Lane at a speed of 35 miles per hour. Sanguinetti Lane was paved to a width of 18 to 20 feet and had no sidewalks. He proceeded north thereon toward its intersection with Alpine Road where there was a stop sign facing appellant's car. Appellant traveled on the lane at a speed of between 50 and 60 miles per hour and Mrs. Allen again requested him to "please slow

down."  Again he disregarded the request until, about 75 feet from the stop sign, he took his foot off the gas throttle but did not apply his brakes or stop.  He entered the intersection at about 35 miles per hour and collided with a westbound car driven by Lloyd K. McBride which had entered the intersection but had stopped on seeing appellant's car approaching.  Appellant's car traveled from 75 to 100 feet after the collision before it came to rest in a ditch.

Appellant testified that he did not see the stop sign on Sanguinetti Lane, nor know of its existence.  There were reflectors on the sign and Mrs. Allen testified that she saw it when they were about 200 feet from it.  Her daughter testified that she also saw it when they were about a half a block therefrom.  Photographs of the intersection introduced by appellants show this sign to have been a large one which must have been plainly visible.  June Allen also testified that not long prior to the day of the accident she had traveled with appellant in his car on Sanguinetti Lane, at which time appellant had stopped at this stop sign.

From the foregoing it is apparent that appellant not only passed through the stop sign but that he entered the intersection at a speed of approximately 35 miles per hour.  Plaintiffs admittedly did not warn appellant of the existence of the stop sign; and, as before stated, he testified that he did not see it nor know of it.  However, the jury were not compelled to accept appellant's testimony in this connection, and could well have decided from the evidence that he saw it but disregarded it.

Does the evidence, then, support a conclusion that appellant's conduct was wilful misconduct?

A definition of "wilful misconduct," followed and approved in many later cases, is contained in *Turner* v. *Standard Oil Co.*, 134 Cal.App. 622, 626 [25 P.2d 988], as follows:

"Wilful misconduct, within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something that should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result."

This court adopted the same definition in *Hagglund* v. *Nelson*, 23 Cal.App.2d 348, 352 [73 P.2d 265], and a hearing in the Supreme Court was denied.  In that case *Norton* v. *Puter*, 138 Cal.App. 253, 258 [32 P.2d 172], in which the Supreme Court denied a hearing, was quoted as follows:

"Wilful misconduct depends upon the facts of a particular case and necessarily involves deliberate, intentional or *wanton conduct* in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom." (Italics added.)

In *Bechtold* v. *Bishop & Co., Inc.,* 16 Cal.2d 285 [105 P.2d 984], failure to stop at a stop sign was held to constitute wilful misconduct. Also, a disregard of stop signs and speed were deemed to constitute "wilful misconduct" in *Gibson* v. *Easley,* 138 Cal.App. 303 [32 P.2d 983], where, as here, the driver was earnestly admonished by his guest to drive more slowly. Speed and disregard of stop signs were also held "wilful misconduct" in *Browne* v. *Fernandez,* 140 Cal.App. 689 [36 P.2d 122], in which Justice Spence in his concurring opinion (hearing in Supreme Court denied by a divided court) said at page 697:

"Disregarding conflicts, there was evidence in this case to show that despite the admonition of his guests, appellant Mabie disregarded the stop sign, proceeded into the intersection at a speed of approximately twenty-five miles per hour and then speeded up his car in an effort to beat the two oncoming cars which were traveling along the highway. Conceding the case to be a close one, I believe that the jury could properly infer from the evidence presented that there was the requisite intent and that there was the requisite knowledge of probability of injury to his guests to constitute wilful misconduct."

Speed under the circumstances of time and conditions of the highway was also held to constitute "wilful misconduct" in *Van Fleet* v. *Heyler,* 51 Cal.App.2d 719 [125 P.2d 586]; and in *DeLoss* v. *Lewis,* 78 Cal.App.2d 223, 225 [177 P.2d 589], the court said:

" 'Therefore,' as said in *Hastings* v. *Serleto,* 61 Cal.App.2d 672, 682 [143 P.2d 956], 'the question of whether the defendant driver herein intentionally drove his automobile with a wanton and reckless disregard of the possible result of such driving or whether he intentionally drove his automobile with a knowledge, express or implied, that serious injury would be a probable (as distinguished from a possible) result thereof, is essentially one of fact for determination by the fact finder.' "

In *Rawlins* v. *Lory,* 44 Cal.App.2d 20, 23 [111 P.2d 973], the course of conduct of the driver of the car involved in an

accident was held properly considered in arriving at a determination as to whether he was chargeable with wilful misconduct, such conduct being designated as "skylarking."

As for appellants' contention that plaintiffs assumed the risk of injury by riding with appellant, this, again, was a question for the jury; and appellants so recognized it in one of their requested instructions which was given by the trial court. See *Lindemann* v. *San Joaquin Cotton Oil Co.*, 5 Cal.2d 480, 507 [55 P.2d 870]; *Shields* v. *King*, 207 Cal. 275 [277 P. 1043]; *Van Fleet* v. *Heyler*, *supra*, at pages 733-734.

Regarding the third argument, that plaintiffs were guilty of contributory negligence because they did not warn the driver of the existence of the stop sign, that, also, presented a question for the jury. (*Shields* v. *King*, *supra; Cate* v. *Fresno Traction Co.*, 213 Cal. 190, 201 [2 P.2d 364]; *Meyers* v. *Southern Pacific Co.*, 63 Cal.App. 164, 168 [218 P. 284]; *Tice* v. *Pacific Electric Ry. Co.*, 36 Cal.App.2d 66, 71 [96 P.2d 1022, 97 P.2d 844].)

During the trial defendants presented, progressively, motions for a nonsuit, for a directed verdict in their favor, for judgment notwithstanding the verdict, and for a new trial, urging on each motion that the evidence was insufficient. Said motions were denied, thus indicating that the trial court, which heard the evidence, was satisfied with its sufficiency.

We agree with its conclusion, and the judgment is, therefore, affirmed.

Peek, J., and Thompson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 22, 1948.