[Civ. No. 17611.   Second Dist., Div. Three.   Nov. 16, 1950.]

MORSE M. ANDERSON, Appellant, v. ROBERT E. HAWKINS, Respondent.

Samuel P. Young and John K. Otis for Appellant.

Parker, Stanbury, Reese & McGee and White McGee, Jr., for Respondent.

VALLÉE, J.—Appeal by plaintiff from a judgment entered on a jury verdict in favor of defendant in an action for damages for personal injuries sustained as a guest-passenger in defendant's truck, as the result of a collision between his truck and that of another. We state the evidence in the light most favorable to the prevailing party.

The accident occurred in the middle of a 400-foot-long bridge on June 25, 1948, about 11 o'clock p. m. Defendant, with plaintiff as his guest-passenger, was driving his truck east on Whittier Boulevard in the county of Los Angeles.

Plaintiff was 29 years of age, was well educated, having had two years of college, and had done considerable traveling. Although a cripple from birth—a victim of a congenital spastic condition—he could walk "about 15 to 20 feet" without holding on to something. A good deal of the time he used a cane. He traveled about in a specially built tricycle. He had met defendant several months prior to the accident and saw him on the average of three nights a week at a neighborhood night spot, called "Club 99." Plaintiff and defendant belonged to the "South Paw Club," the members of which "were fined if they were caught drinking with any hand but the left hand." On the night in question plaintiff had been invited by the proprietors of "Club 99" to a barbecue and used his tricycle to get there. Defendant was also there. Plaintiff saw defendant mix his drinks five or six times. First he would have a highball and then a glass of wine. Defendant asked plaintiff to go with him and have a chicken dinner. About 11 o'clock defendant took plaintiff by the shoulders and said, "Come on, we will go together." He picked plaintiff up and carried him to his truck. When defendant reached the truck, he put plaintiff on his feet and opened the door. Plaintiff got into the truck by himself.

Almost immediately after leaving "Club 99," defendant began to weave his truck from side to side and over the white line. He traveled between 70 and 75 miles an hour. Plaintiff remonstrated 10 or 12 times about the speed, but defendant paid no heed. Plaintiff testified that at this point he "began to think" defendant was intoxicated. On two occasions plaintiff reached over with his left foot and kicked off the ignition key. Each time the car came to a stop and defendant stepped out for about two minutes. Defendant thought he was out of gas and suggested they flag someone. After the second stop, defendant asked plaintiff to watch for a gas station. Plaintiff called defendant's attention to one and defendant drove his truck into it. While there, the attendant put gasoline into the tank, checked the oil, and discussed the amount of the sale with defendant. Plaintiff made no effort to get out of the truck or ask the attendant for help or assistance. He fell asleep almost as soon as the truck left the station. The accident occurred very shortly thereafter.

Neither plaintiff nor defendant was able to tell what occurred immediately preceding the accident. Plaintiff was asleep at the time, and defendant testified the last thing he remembered was listening to the radio at home and the next thing was waking up in the county hospital about five days later. Two witnesses to the accident, however, supplied details as to what transpired during the last few hundred feet before the collision. The witnesses, both motorists proceeding easterly on Whittier Boulevard, testified that defendant was traveling easterly on Whittier between 60 and 70 miles an hour, crossed the double white line in the center of the highway and hit a hay truck, properly lighted, which was traveling westerly on Whittier. The distance between "Club 99" and the scene of the accident was approximately 4½ miles.

██ The only duty a driver of a car owes his guest is to refrain from wilful misconduct or intoxication. (Veh. Code, § 403.) The complaint alleged defendant was intoxicated at the time of the accident and "negligently, wilfully, and intentionally" drove his truck at an "excessive" rate of speed. The defendant denied the allegations generally and pleaded contributory negligence and assumption of risk. From the foregoing evidence, which was not controverted, defendant was intoxicated or guilty of wilful misconduct. The fact that defendant may have been intoxicated or guilty of wilful misconduct, however, was not determinative of his liability. There was still in issue the question of plaintiff's contributory negligence or assumption of risk. The jury resolved this issue in favor of defendant.

No contention is made that the evidence does not support the verdict. The refusal of the trial judge to give certain instructions proffered by plaintiff is the only error assigned.

██ Plaintiff requested an instruction to the effect that in determining whether he should have left defendant's truck at any time before the accident, the jury was to be "governed by the following rule: What would and what could a reasonable person have done in plaintiff's position and in plaintiff's physically handicapped condition, seeing what he saw, knowing what he knew, in the light of the locality, time of night and surrounding circumstances of his situation, and affected by his physical ability at that time and the human propensities or elements which ordinarily enter into the formation of and influence the judgment?" and one reading, "You are instructed that before a failure to leave a vehicle will support an inference of assent to a driver's misconduct, it must appear

that the guest had a reasonable opportunity and physical ability to alight and that a person of ordinary prudence and of *physical disability* similar to that of plaintiff herein and in plaintiff's position, would have alighted from the vehicle and refused to resume passage in it." (Emphasis by appellant.) The instructions were rejected. Plaintiff argues that no similar instructions were given and that under the facts they should have been given because there was testimony that plaintiff did not leave defendant's car at any time due to his physical handicap and because of the fear and emotional strain he was under by reason of defendant's conduct. The proffered instructions were covered by other instructions given at the request of plaintiff.[1] There was no necessity of including the minute details set forth in the refused instructions.

Plaintiff requested two instructions on imminent peril. Under the facts, they were properly refused. The cases cited by plaintiff in support of his contention are factually distinguishable. Plaintiff became fully aware of defendant's intoxication and conduct, and of his own danger almost immediately after leaving "Club 99." A reasonable opportunity to alight was afforded him at the gas station, notwithstanding his physical handicap. It was a reasonably safe place and he had ample time to alight. There was also a certain amount of protection which the presence of the attendant afforded him, if, as he suggested, defendant might have become belligerent. His decision to stay in the car was not made as a result of a sudden emergency or peril. After having the opportunity to alight, he went to sleep. Whether he was negligent in not leaving the truck at the gas station or calling for assistance was a question for the jury. (*Lindemann* v. *San Joaquin Cotton Oil Co.*, 5 Cal.2d 480, 507 [55 P.2d 870].) In the absence of evidence disclosing a situation of imminent peril, the doctrine has no application and a refusal to give an instruction thereon is not error. (*Groat* v. *Walkup Drayage etc.*

---

[1](a) "It should be noted to bar recovery, assumption of risk must be voluntary. To be voluntary, these two factors must be present: First, the person in question must have actual knowledge of the danger, or the conditions must be such that he would have such knowledge if he exercised ordinary care. Second, he must have freedom of choice. This freedom of choice must come from circumstances that provide him a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose himself to the danger in question."

(b) "In determining whether a person assented to, or assumed, a risk so as to bar recovery by him of damages for injury, you may consider his age, experience and capacity along with the other surrounding circumstances as shown by the evidence."

*Co.*, 14 Cal.App.2d 350, 353 [58 P.2d 200]; *Vedder* v. *Bireley*, 92 Cal.App. 52, 60 [267 P. 724].)

█ Appellant assigns as error the failure of the court to give four instructions "as to the circumstances under which the defendant was chargeable with the probable consequences of his acts."[2] He argues that the instructions given did not permit the jury to infer from the circumstances in evidence that the defendant had knowledge of the probable consequences of his acts. An instruction defining wilful misconduct, requested by plaintiff, was given.[3] The court also gave other instructions pertinent to the subject.[4] Nevertheless, the jury should have been specifically instructed that the defendant was charged with knowledge of the probable consequences of his conduct if such consequences were apparent to any person of

---

[2](a) "If you should believe from the evidence that the defendant himself did not realize the probable consequences of his conduct at the time and place of the accident herein, he, nevertheless, may be guilty of wilful misconduct, if you believe from the evidence that a man of ordinary prudence and intelligence° would have realized those probable consequences, even though defendant himself did not realize said consequences."

(b) "It is now well settled that an intent to injury anyone is not a necessary ingredient of wilful misconduct. In order to establish that the defendant was guilty of wilful misconduct, it is not necessary for the plaintiff to show that the defendant intended to cause the accident or injuries to plaintiff."

(c) "In order that one's conduct may be reckless, it is not necessary that he himself recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament, or to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows, or has reason to know, of circumstances which would bring home to the realization of the ordinarily reasonable man the highly dangerous character of his conduct."

(d) "If you believe from the evidence that under the circumstances and conditions existing at the time of the accident herein, the defendant was knowingly flirting with danger, without necessity compelling him to take the chance, then you may find that defendant was guilty of wilful misconduct."

[3]"The words 'wilful misconduct' have a meaning in the law, additional to that which they have in common usage. If we were to use the words in their ordinary sense, they would mean simply the indulging in wrongful conduct by conscious choice. Such conduct might consist of doing something that ought not to be done or in failing to do something that ought to be done. But in order to be a basis for liability to a guest under our law, the misconduct must be something more than intentional and wrongful; it must be done under circumstances which show either knowledge that serious injury to the guest probably will result, or a wanton and reckless disregard of the possible results."

[4](a) "When there is a question whether a vehicle driver conducted himself with knowledge that serious injury to a guest probably would result from his conduct, proof of such knowledge does not have to be by direct evidence. The jury has a right to infer that the driver had

ordinary prudence. (*Van Fleet* v. *Heyler,* 51 Cal.App.2d 719, 727 [125 P.2d 586].) However, upon a consideration of the entire record, including the evidence, we do not believe that the failure to so instruct the jury resulted in a miscarriage of justice.

■ Appellant urges that the court erred in declining to instruct the jury that excessive speed, under certain conditions, may amount to wilful misconduct.[5] The requested instruction correctly stated the law. (*Van Fleet* v. *Heyler,* 51 Cal.App.2d 719, 726 [125 P.2d 586]; *Hall* v. *Mazzei,* 14 Cal. App.2d 48, 52 [57 P.2d 948]; *Fisher* v. *Zimmerman,* 23 Cal. App.2d 696, 702 [73 P.2d 1243]; *Allen* v. *Robinson,* 85 Cal. App.2d 617, 621 [193 P.2d 498].) We believe the instruction should have been given. ■ The complaint alleged that defendant was guilty of wilful misconduct in that he drove his truck at an excessive rate of speed; the evidence was without conflict that he was driving at an excessive rate of speed; and it was plaintiff's theory of the case that excessive speed, under the circumstances present here, constituted wilful misconduct. The evidence was uncontroverted that defendant was either intoxicated or guilty of wilful misconduct. The jury must, therefore, have found that plaintiff voluntarily assumed whatever risks were involved in riding with defendant after becoming aware of his danger and having a reasonable opportunity "to safely refuse to expose himself to the danger in question." No prejudice, therefore, ensued from the court's refusal to give the proffered instruction.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

---

such knowledge, if such an inference may reasonably be drawn from facts in evidence, and if the judgment of the jury so directs.''

(b) ''It follows, therefore, that if you should find that defendant was negligent, and if you should find that he intentionally did something that was wrongful and which was a proximate cause of injury to plaintiff, still a case of wilful misconduct is not established unless you further find that defendant's conduct was characterized by the element of wantonness as heretofore described. But if it was, then defendant is liable, unless plaintiff is barred from relief by contributory negligence, if any, or by an assumption of the risk, if such there was, under rules to be stated later.''

[5] ''Wilful misconduct, like negligence, must relate to the time, place, person and surrounding circumstances and must be measured by them. Excessive speed under some circumstances may amount to negligence, under others to gross negligence, and under still others, to wilful misconduct. It is for you, the jury, to consider the speed of the defendant in the operation of his automobile, under the circumstances, on the question of whether or not defendant was guilty of wilful misconduct.''