[Civ. No. 8373. Third Dist. Aug. 3, 1954.]

PAMELA HALBERT et al., Respondents, v. JANE BERLINGER, as Administratrix, etc., et al., Appellants.

Peters & Peters, David Livingston and A. Lawrence Burbank for Appellants.

Jack M. McPherson, Alexander, Bacon & Mundhenk and William F. Stone for Respondents.

SCHOTTKY, J.—On September 8, 1949, Henry W. Halbert and his wife, Olive Brown Halbert, were riding in a Beechcraft Bonanza airplane when the plane crashed to the ground during an attempted landing at the Masterson Ranch in Tehama County. The plane was owned by Berlinger Construction Company, a corporation, and was being piloted by Roy Berlinger who was the president of the company. Mrs. Halbert and Mr. Berlinger were killed in the accident, and Mr. Halbert sustained severe personal injuries. Mrs. Halbert is survived by her husband and by two minor children, Pamela and Jay Stephen, who were then 3 years old and 1 year old, respectively. Jane Berlinger (now Jane Herman) was the surviving widow of Mr. Berlinger and is the administratrix of his estate.

The minor children, by Henry W. Halbert, their guardian, Henry W. Halbert, as administrator of the estate of Olive Brown Halbert, deceased, and Henry W. Halbert, individu-

ally, filed an action for damages against Jane Berlinger as administratrix of the estate of Roy Berlinger, deceased, and Berlinger Construction Company, a corporation.

The second amended complaint, upon which the case went to trial, pleaded eight separate causes of action. In the first two causes of action, Mr. Halbert, individually, and the minor children, through their general guardian, Mr. Halbert, seek damages from appellant corporation for the death of Mrs. Halbert, the first cause of action alleging the corporation's negligence and Mrs. Halbert's status as a passenger for a consideration, and the second alleging the corporation's wilful misconduct, with Mrs. Halbert as a guest in the plane. Both causes of action allege commission of the wrongful act by the corporation, acting by and through its employee, Mr. Berlinger. Both also allege, as the basis for damages, that the husband was deprived of the society, services and comfort of his wife, and that the children were deprived of their mother's love, affection, comfort, society, protection, guidance and ability and training in education. The amount of the funeral and burial expenses is also alleged.

In the third and fourth causes of action, Mr. Halbert seeks damages from the corporation for his personal injuries, the third cause of action alleging negligence and passenger status as in the first cause of action, and the fourth alleging wilful misconduct and guest status as in the second. Allegations that the corporation committed the wrongful act are incorporated by reference from the previous causes of action, and Mr. Halbert's medical and other expenses, incurred and to be incurred by reason of his disability, are also alleged.

In the fifth and sixth causes of action, Mr. Halbert, individually and as administrator of Mrs. Halbert's estate, and the minor children seek damages from appellant Jane Berlinger as administratrix of Mr. Berlinger's estate, by reason of Mrs. Halbert's death. The fifth cause of action alleges negligence and passenger status as in the first and third causes of action, and the sixth cause of action alleges wilful misconduct and guest status as in the second and fourth causes of action. In both the fifth and sixth causes of action, damages are based on the husband's loss of the services of his wife and the children's loss of their mother's protection, guidance and ability and training in connection with their education and rearing, resulting in pecuniary loss and damage to the husband's property, property rights and estate, and to the earnings, profits, property, property rights and estate

of the children. The heirship of the husband and the minor children, as well as Mrs. Halbert's age, health and homemaking abilities, are also alleged. Both causes of action also contain allegations covering the funeral and burial expenses.

In the seventh and eighth causes of action, Mr. Halbert seeks damages from Jane Berlinger, as administratrix, for his personal injuries. These causes of action follow the same pattern as the previous ones, the seventh alleging negligence and passenger status, and the eighth alleging wilful misconduct and guest status. However, the wrongful act here (as in the fifth and sixth causes of action) was attributed to Mr. Berlinger and not to the corporation. Allegations covering Mr. Halbert's medical expenses, loss of income, and prospective medical treatment are included. It appears that none of the plaintiffs filed a claim against Berlinger estate in the probate proceedings therein, and the last four causes of action are silent on that point.

At the close of plaintiffs' case during the trial, defendants moved for a judgment of nonsuit as to each cause of action; this motion was denied. At the close of the entire case, defendants moved for a directed verdict as to each cause of action, which motion also was denied. The case was submitted to the jury which returned four separate verdicts, two each for $12,000 in favor of the minor children and Mr. Halbert, individually and as administrator of his deceased wife's estate, and against defendant Jane Berlinger as administratrix, in the one case, and against the corporation, in the other, and two each for $19,000 in favor of Mr. Halbert and against defendant Jane Berlinger, as administratrix, in the one case, and against defendant corporation, in the other. All of the defendants thereupon moved for judgment notwithstanding the verdicts, reserving the right to move for a new trial. Defendants also filed a motion for a new trial and it was stipulated that the motion for judgment notwithstanding the verdict and the motion for a new trial should be heard at the same time. Upon said hearing the motion for judgment notwithstanding the verdict was denied and counsel for defendants dismissed the motion for a new trial. This appeal is by all defendants from the orders denying their motions for judgment notwithstanding the verdict.

As hereinbefore stated the first four causes of action were against the Berlinger Construction Company, and the fifth,

sixth, seventh and eighth causes of action were against the administratrix of the estate of Roy Berlinger. In arguing for a reversal of the orders denying their motions for judgment notwithstanding the verdict, appellants made the following major contentions: (1) It was necessary to file a claim against the estate of Berlinger, and none having been filed the judgment should have been rendered in favor of defendant Jane Berlinger, as administratrix; (2) at the time of the accident Berlinger was not acting within the scope of his employment by the Berlinger corporation, and the corporation was not responsible for his conduct; (3) there was no evidence either of wilful misconduct on the part of Berlinger or of negligence which proximately contributed to the accident. We shall discuss these contentions in the order of their statement.

Section 707 of the Probate Code was amended in 1949, and as amended requires the presentation of claims "for damages for physical injuries or death, or injury to property" against estates of decedents. The accident here involved happened on September 8, 1949, the amendment to said section became effective on October 1, 1949, and the instant action was filed on September 5, 1950. The pleadings do not allege that any claim was filed against the estate of Roy Berlinger and there was no evidence of the filing of any claim. In fact it is conceded that no claim was filed, and respondents contend that because the amendment to said section 707 was not in effect on September 8, 1949, the date of the accident, it does not apply to the instant action.

However, the precise question has been decided adversely to respondents' contention in the case of *Casey* v. *Katz*, 114 Cal.App.2d 391 [250 P.2d 291]. The facts in that case are quite similar to those in the instant case, and we quote from page 392 of the well-considered opinion of Mr. Justice Dooling as follows:

"This action is based on the prosecution for battery of plaintiff on the complaint of the decedent in May, 1949, and the cause of action which survived decedent's death on September 21, 1949, is one for 'injury to property.' (*Hunt* v. *Authier*, 28 Cal.2d 288 [169 P.2d 913, 171 A.L.R. 1379]; *Moffat* v. *Smith*, 33 Cal.2d 905 [206 P.2d 353].) Since Probate Code, section 707 as amended requires the presentation of a claim 'for injury to property' the cause of action in this case falls squarely within its terms. The date on which the original complaint was filed does not appear in the tran-

script but since the appointment of defendant as administrator is alleged to have occurred on October 19, 1949, the original complaint must have been filed after the effective date of the amendment to Probate Code, section 707, which was October 1, 1949.

"The 1949 amendment to Probate Code, section 707, is not to be given retroactive effect so as to apply to actions which had been commenced before it became operative (*National Auto. & Cas. Ins. Co.* v. *Ainge, supra,* 34 Cal.2d [806], 810 [215 P.2d 13]) but since it affects procedure only and not substantive rights it is properly applicable to all actions against representatives of decedent's estates commenced after its effective date. ▮ No litigant has any vested rights in mere matters of procedure (*San Bernardino County* v. *Industrial Acc. Com.,* 217 Cal. 618, 628 et seq. [20 P.2d 673]; *Arques* v. *National Superior Co.,* 67 Cal.App.2d 763, 778 [155 P.2d 643]; *City of Los Angeles* v. *Oliver,* 102 Cal.App. 299, 315-316 [283 P. 298]) so long as an adequate remedy remains (*Kerchoff-Cuzner Mill & Lbr. Co.* v. *Olmstead,* 85 Cal. 80 [24 P. 648]; *Lantz* v. *Fishburn,* 17 Cal.App. 583, 590 [120 P. 1068]). This rule finds frequent application where existing statutes of limitations are shortened or new ones adopted (5 Cal.Jur., Constitutional Law, § 148, pp. 755-756) and '(c)onditions precedent to the maintenance of causes of action that have already accrued may be imposed by the legislature, where the requirements operate only as reasonable restrictions on the exercise of the right to sue.' (16 C.J.S., Constitutional Law, § 258, p. 680; *Hewitt Logging Co.* v. *Northern Pac. Ry. Co.,* 97 Wash. 597 [166 P. 1153, 3 A.L.R. 198]; *Lamburth* v. *Winchester Ave. R. Co.,* 76 F. 348.) In this case appellant had the full time allowed by Probate Code, section 707, within which to present the required claim so that it is not open to him to argue that the time actually available was unreasonably short."

Respondents seek to avoid the effect of *Casey* v. *Katz* by arguing that this case is not here controlling because the court could not have had in mind the decision in *Cort* v. *Steen,* 36 Cal.2d 437 [224 P.2d 723], which expressly determined that the Legislature intended that the law in force at the time of death should apply, and that the retroactive application of section 707, Probate Code, as decided in *Casey* v. *Katz, supra,* would preclude an action for property damage under the doctrine of *Hunt* v. *Authier,* 28 Cal.2d 288 [169

P.2d 913], where the six months' period for filing claims had elapsed prior to October 1, 1949, and there still remained sufficient time for filing the action within the one year limitation.

However, the decision in *Casey* v. *Katz, supra,* is based on the settled principle that legislation which is concerned with matters of procedure is controlling with respect to actions commenced after the legislation goes into force. This does not give such legislation a retroactive effect. Such a result would ensue only in the event that the new statute—or amendment—were held applicable to an action which was commenced before the enactment.

There was no retroactive application of section 707 in *Casey* v. *Katz.* It often happens that the time for filing claims against estates and against public agencies expires before the statutory period of limitation runs. Respondents had ample time after October 1, 1949 (the date upon which the amendment to section 707 took effect) in which to file their claims. The administratrix was not appointed until September 26, 1949, and assuming that she gave immediate notice to creditors, the time to file claims did not expire until March 26, 1950. Respondents' action was not filed until September 5, 1950, and it thus appears that they had the full six months period in which to file their claim. It must not be forgotten that the purpose of statutory requirements for the presentation of claims, as expressed in 11 California Jurisprudence at page 653, ''is to save to estates of deceased persons the costs and expenses of useless suits by providing an opportunity of amicable adjustment and to protect the estate from litigation until such a period as the administrator or executor may secure the assets for the purpose of liquidating the claims.''

We must, therefore, agree with the contention of appellants that the failure to file a claim against the estate of Roy Berlinger prevents a recovery of judgment against said estate, and that the fifth, sixth, seventh and eighth causes of action which did not allege that a claim had been filed failed to state a cause of action. For as stated in the recent case of *Chahon* v. *Schneider,* 117 Cal.App.2d 334, at page 346 [256 P.2d 54] :

''In an action at law for damages or for *quantum meruit,* the plaintiff is a creditor and must file his claim against the estate of the deceased promisor or be forever barred. A complaint which does not allege such a filing fails to state

a cause of action. (*Morrison* v. *Land,* 169 Cal. 580, 585 [147 P. 259] ; *De Mattos* v. *McGovern, supra,* 25 Cal.App.2d 429, 433 [77 P.2d 522].)''

There is no merit in respondents' contention that this point was not raised in the trial court and cannot be raised for the first time on appeal. Appellants dispute respondents' claim that the point was not raised in the trial court and point to the demurrer filed by appellants. ■ However, it is well settled that the objection that the complaint does not state a cause of action may be presented for the first time on appeal. In *Berryman* v. *Quinlan,* 29 Cal.App.2d 608 [85 P.2d 202], the court said at page 612:

''The general rule, subject to exceptions, is that an appellate court will not consider questions raised for the first time on appeal. One of the exceptions is where the complaint does not state a cause of action. (Code Civ. Proc., § 434.) The court in *Reid* v. *Thomas,* 99 Cal.App. 719, 721 [279 P. 226], held: 'Where a complaint absolutely fails to state a cause of action, a demurrer is not necessary, but the defect may be raised at any stage of the proceeding and in any manner which presents the grounds of objection.' ''

Having concluded that the court erred in denying the motion of appellants for a judgment notwithstanding the verdict as to the fifth, sixth, seventh and eighth causes of action, we shall discuss the remaining contentions of appellants as they relate to the first four causes of action which are against appellant Berlinger Construction Company. Before doing so we shall give a brief summary of the evidence as shown by the record.

By its verdicts in favor of respondents and against appellant corporation, the jury impliedly found either that the Halberts were passengers for a consideration and Mr. Berlinger was negligent in the operation of the plane, or that the Halberts were guests and Mr. Berlinger committed wilful misconduct, and in either event that the flight was made for business purposes of the corporation and Mr. Berlinger was acting within the scope of his authority as president of the corporation.

There is substantial evidence that the corporation expected to benefit from the flight. Mr. Halbert had interested a friend, a Dr. Rice, in a proposal whereby the latter would furnish the capital to purchase a ranch and Halbert would operate the ranch on a 50-50 basis. They were interested in

two specific ranches, the Lewis Ranch and the LaBrey Ranch, both of which would require some construction work. Mr. Halbert discussed the ranches and the work with Mr. Berlinger at a party given by a mutual friend, with the result that Mr. Berlinger suggested they go over and look at the ranches and then go on and do some dove shooting. They agreed upon the following Thursday as the date for the flight, and the flight was made on that day. Mrs. Berlinger had been included in the plans, but was unable to go because she did not have a baby sitter. After taking off from the Chico Airport (the parties were residents of Chico), Mr. Berlinger flew to the Lewis Ranch where Mr. Halbert pointed out the amount of construction work to be done. Berlinger then flew to the LaBrey Ranch and circled over it while Mr. Halbert pointed out that there was only a house on the ranch, with no barns, stock sheds and the like. After this, the flight proceeded on to the Masterson Ranch where the accident occurred during an attempted landing.

Appellant corporation was wholly owned by Mr. and Mrs. Berlinger, and the former was president of the company. Mrs. Berlinger took no active part in the management of the business. The corporation was engaged primarily in the business of building grain elevators, but it did build other buildings, too. Most of the jobs were on ranches. The corporation owned the plane and Mr. Berlinger used it in connection with the business; he was the only one who did operate the plane.

It was stipulated at the trial that the plane had been thoroughly checked before taking off, and was structurally and mechanically sound and airworthy in every respect. There is no indication in the evidence that anyone other than Mr. Berlinger exercised any control over the operation of the plane during the flight; in fact, Mr. Halbert had flown only once before and this was Mrs. Halbert's first flight. There is evidence that the flying conditions that day were not ideal, because of the wind which was blowing in gusts and was particularly turbulent in the vicinity of the landing strip on the Masterson Ranch, due to the hills which enclosed the strip at the north and south ends. One of appellants' expert witnesses was of the opinion that the crash was caused by the plane being caught in a turbulence in the nature of a downdraft. Mr. Halbert testified that he was concerned about the wind and mentioned it to Mr. Berlinger before the flight, and that later, when the plane was over the LaBrey Ranch, he told Berlinger that he thought it was too windy and

suggested that they go back and get the Halberts' car. He also asked Berlinger whether the latter thought that the doves would be flying, to which Berlinger replied: "While we are up here we will go on over and see." It appears that Mr. Berlinger was unable to find the Masterson Ranch, at first, and was flying north, before the wind, when he spied the landing strip, made a sharp left turn toward it and crashed. The plane was cruising at about 90 miles per hour at the time. There is evidence that the particular plane involved here was not designed for small field operations, and that even an experienced pilot would have his "hands fairly full" in attempting to land the plane on the Masterson Ranch strip under ideal conditions. There is also evidence that under the conditions then present the plane did not have enough speed when the turn was attempted. There is no showing that Mr. Berlinger had ever landed a plane on this strip, and the jury might well infer from the expert testimony that Berlinger should at least have circled the strip, in order to observe wind conditions, before attempting a landing.

Appellants contend that even assuming negligence or even wilful misconduct on the part of Berlinger, the Berlinger Construction Company was not responsible for his conduct because at the time of the accident he was not acting within the scope of his employment.

The record shows that Roy Berlinger was the president of the Berlinger Construction Company and thus an executive officer. The executive officer is more than an agent. "He acts and speaks for the corporation in furthering its express objects. . . ." (*Herring* v. *Fisher*, 110 Cal.App.2d 322, 330 [242 P.2d 963].) He is the representative of the corporation itself. (*Jeppi* v. *Brockman Holding Co.*, 34 Cal.2d 11, 17 [206 P.2d 847, 9 A.L.R.2d 1297].)

The airplane was owned by the Berlinger Construction Company and was being flown by its president, Roy Berlinger. While Mr. and Mrs. Berlinger owned all the stock in the Berlinger Construction Company, Mrs. Berlinger took no part in the management of the company. In view of the stock ownership and Mr. Berlinger's being president, the jury could reasonably infer that Mr. Berlinger had unrestricted and unlimited authority to act for the Berlinger Construction Company in furthering its objectives.

In *Shields* v. *Oxnard Harbor District*, 46 Cal.App.2d 477, the court said at page 487 [116 P.2d 121]:

". . . The law is established in California that, if there

is proof that (1) an automobile belongs to an employer, and (2) at the time of an accident is being operated by an employee of the owner, an inference arises sufficient to support a finding that the employee was operating the automobile (a) by the authority of his employer, and (b) within the scope of his employment. . . .''

See also *Bushnell* v. *Yoshika Tashiro*, 115 Cal.App. 563, 565 [2 P.2d 550]; *Westberg* v. *Willde*, 14 Cal.2d 360, 371 [94 P.2d 590].

Appellants endeavor to divide and classify the airplane flight into two separate and distinct phases, namely, the flight to and over the Lewis and LaBrey Ranches as business, and the flight from the LaBrey Ranch to the Masterson Ranch as pleasure, and then argue that the pleasure part of the flight was not within the scope and course of Roy Berlinger's employment as president of the Berlinger Construction Company. Respondents in reply argue that assuming, but not conceding, that the flight could be divisible so that after leaving the La-Brey Ranch it was a pleasure flight, nevertheless the entire flight was within the course and scope of Roy Berlinger's employment. Respondents argue further that the jury could reasonably infer that a pleasure flight from the LaBrey Ranch to the Masterson Ranch was an entertainment activity in furtherance of the business of the Berlinger Construction Company because entertainment of prospective customers is a common business practice and a prolific source of profitable business.

At the time of the accident the liability of the owner or pilot of an aircraft carrying passengers, for injury or death to such passengers, was governed by the State Aeronautics Commission Act, which provided that such liability shall be determined by the rules of law applicable to torts on the lands or waters of this state, arising out of similar relationship, and also that no guest riding in or upon any aircraft without giving compensation for such ride shall have, nor shall any other person have, any right of action for civil damages against the pilot, or any other person legally liable for the pilot's conduct, on account of personal injury to or death of such guest during such ride, unless the plaintiff in such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of the pilot. (Deering's Gen. Laws, Act 151a, §§ 2(f), 15 [now Pub. Util. Code, §§ 21404, 21406].) In construing the guest statute applicable to airplanes, resort should be had to the definitions and dis-

cussions of the guest status as found in the automobile cases. (*Whittemore* v. *Lockheed Aircraft Corp.*, 51 Cal.App.2d 605, 609 [125 P.2d 531].)

We believe that the jury could have found from the evidence that Mr. Halbert was a prospective customer of the corporation, and that Mr. Berlinger, as the president and executive officer of the corporation, was motivated by business considerations in suggesting and making the flight. The fact that the parties also planned to do some hunting would not necessarily mean that the trip was a social venture; it is common knowledge that businessmen often entertain customers and prospective customers for business reasons. This line of testimony concerns not only the corporation's liability on grounds of respondeat superior, but also the status of the Halberts, whether that of passengers or guests.

The court would have been justified in granting appellants' motion for judgment notwithstanding the verdicts as to the first four causes of action (which were against the Berlinger Corporation) if, and only if, after disregarding all evidence adverse to respondents and giving to respondents' evidence all the value to which it is legally entitled, and after indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of respondents. (*Blake* v. *Hearst Publications Inc.*, 75 Cal.App.2d 6, 8 [170 P.2d 100].)

We are convinced that the record amply supports the implied finding of the jury that Roy Berlinger was acting for and on behalf of the Berlinger Corporation in the operation of said airplane at the time of the accident. We are convinced also that there was sufficient evidence to justify the conclusion that the Halberts were passengers for a consideration.

The necessary compensation may consist of any benefit of a tangible nature received by the operator of the plane as a consideration for the ride, and where it consists only of some business advantage or benefit which will accrue to the operator, in order to take the case out of the guest class it must be of a practical and tangible nature identified definitely with the business of the operator. (*Whittemore* v. *Lockheed Aircraft Corp., supra.*) An anticipated or prospective profit is such a benefit. (*Follansbee* v. *Benzenberg*, 122 Cal.App.2d 466, 471 [265 P.2d 183].) We are convinced further that the evidence is sufficient to support the conclusion that

Berlinger was negligent in the operation of said airplane and that such negligence was a proximate cause of the accident.

Appellants have made an able and earnest argument in an effort to prove their contention that the record does not sustain the verdicts. If the verdicts had been in favor of appellants, their argument would be very helpful in pointing out evidence in support of such verdicts, but in view of the adverse verdicts of the jury, the testimony pointed out by appellants merely accentuates the conflict in the testimony, and it was the province of the jury to weigh the evidence and resolve the conflict. Issues of fact are determined in the trial court and an appellate tribunal in considering an appeal from an order denying a motion for judgment notwithstanding the verdict is limited to determining whether or not there is evidence of sufficient substantiality to support the verdict.

In view of our conclusion that the evidence is sufficient to sustain a finding that the Halberts were passengers and not guests, and that Berlinger was negligent in the operation of the airplane, it is unnecessary to discuss the question of wilful misconduct.

The order denying the motion for judgment notwithstanding the verdict is affirmed as to the appellant Berlinger Construction Company and reversed as to appellant Jane Berlinger as administratrix, and appellant estate of Roy Berlinger.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied August 31, 1954, and appellants' petition for a hearing by the Supreme Court was denied September 30, 1954.