[Civ. No. 18214.   First Dist., Div. One.   Apr. 14, 1959.]

LUCILLE N. FULLER et al., Respondents, v. BOB
QUENTIN CHAMBERS et al., Appellants.

604

Norman S. Menifee for Appellants.

Gregory S. Stout for Respondents.

WOOD (Fred B.), J.—Plaintiffs brought this action for the wrongful death of their son who was killed while riding as a guest in a car owned by defendant California Electric Supply Company and driven by defendant Chambers.

The first trial resulted in a nonsuit which was reversed in *Fuller* v. *Chambers*, 142 Cal.App.2d 377 [298 P.2d 125], to which reference is made for a summary of the evidence. In its essential features the evidence was substantially the same upon the second trial as upon the first. The second judgment awards plaintiffs damages in the sum of $20,000.

Defendants claim (1) the verdict is not supported by substantial evidence, (2) errors occurred in the giving and refusing of instructions, and (3) failure of proof that Chambers was operating the company's car with its permission.

(1) *Defendants predicate their claim of insufficiency of the evidence* upon evidence adduced at the second trial, to the effect that none of Chambers' guest riders protested the

manner in which he had been driving, nor observed anything unusual about his driving. That was for the jury to appraise. One of the guests was asleep part of the time and the decedent may have been. The absence of protests and the failure of some of the guests to note anything unusual about the manner of driving did not preclude the jury from believing the evidence, which was substantial, that Chambers, driving on a two-lane highway at night, entered a curve in the road close on the heels of a truck-trailer, passed the trailer on the curve by veering into the left lane and then went off the road to the left through a barrier, making skid marks for 90 feet from their starting point to the barrier and extending to a point about 165 feet beyond the barrier. The driver had been drinking whiskey en route and a witness smelled the odor of liquor on his breath shortly after the accident.

Defendants claim there were inconsistencies in the testimony of plaintiffs' witnesses. We have examined the evidence and find there is no substance to this claim. Moreover, reconciliation of inconsistencies in the evidence is the work of the triers of the facts, not the function of a reviewing court.

Defendants also claim that the imbibing of alcohol was a quite irrelevant factor because this action is based upon "wilful misconduct," not "intoxication," of the driver, as those words are used in section 403 of the Vehicle Code. Such a criticism is wide of the mark. The imbibing of alcohol by Chambers while driving the automobile upon this very occasion was one of a number of factors proper for the jury to consider and weigh when ascertaining and deciding whether or not the decedent's death "proximately resulted from the .... wilful misconduct" of Chambers as such driver (Veh. Code, §.403.).

The parties have cited and discussed a number of decisions bearing upon the sufficiency of the evidence. We see no purpose to be served by an extended discussion of the case law. In regard to sufficiency of the evidence, each case must be decided upon its own facts. The applicable principles of law were adequately expounded upon the former appeal. We concur therein and adopt that exposition for the purpose of this appeal.

(2) *Did prejudicial error occur in the giving and refusing of instructions?*

Defendants claim that the court emasculated their instructions defining "wilful misconduct."

A sentence[1] which the court deleted from defendants' instruction Number 1 was in substance contained in defendants' Numbers 3, 4, and 5, as given by the court in modified form.[2]

■ Defendants complain of the deletion of the following from their instruction Number 4: ". . . the misconduct must be something more than intentional and wrongful; it must be done under circumstances which show either knowledge that serious injury to the guest probably will result, or wanton and reckless disregard of the possible results," and substitution of the following: "But in order to be a basis for liability to a guest under our law it [wilful misconduct] is the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its possible consequence . . ." We see no substantial change. As given, it had the sanction of *Meek* v. *Fowler*, 3 Cal.2d 420, 426 [45 P.2d 194]; and *Mercer-Fraser Co.* v. *Industrial Acc. Com.*, 40 Cal.2d 102, 118 [251 P.2d 955].

■ It was not error to instruct that "[i]t is unlawful for any person who is under the influence of intoxicating liquor to drive a vehicle upon any highway," (Veh. Code, § 502, subd. (a)) particularly in view of the following instruction given: ". . . the pleadings made by the plaintiffs are not based on the ground that the driver of the automobile was intoxicated. Therefore, the sole ground on which plaintiffs seek recovery is for wilful misconduct; however, the question of liquor being consumed by the driver of the automobile can be considered in your determination of whether there was wilful misconduct on the part of the driver under the definitions of wilful miscon-

---

[1] "This section has abolished recovery by guests for injuries caused by negligence, whether ordinary negligence or gross negligence, and hence no matter how negligent you may find the defendant Bob Quentin Chambers to have been, negligence alone will not warrant a recovery by these plaintiffs."

[2] Defendants' Nos. 3, 4 and 5 as given by the court read in part as follows:

No. 3. ". . . Wilful misconduct means something different from and more than negligence, however, gross."

No. 4. ". . . The mere failure to perform a statutory duty is not, alone, wilful misconduct as that failure amounts to simple negligence only and, no matter how gross, that negligence is not sufficient to justify a verdict in favor of the plaintiff in this case."

No. 5. "The court instructs you that even though you might find that defendant . . . drove the automobile negligently and carelessly, and even though you might find that he was guilty of gross negligence in the operation thereof, such finding in itself would not be sufficient to bring in a verdict against the defendant in this case on a charge of wilful misconduct."

duct as the Court has defined,'' showing that the use of intoxicating liquor was only one of the factors to be considered.

■ Defendants mistakenly declare that the court gave an instruction which flatly declared that defendant Chambers was ''driving into the lane set aside for opposite traffic at night while negotiating a curve allegedly in order to pass a large vehicle . . .'' This phrase was preceded by the statement that ''you may consider certain special circumstances *allegedly* [emphasis added] connected with his driving. These special circumstances . . . are . . .'' We think the word ''allegedly'' characterized each set of circumstances as issues, not as established facts.

■ Finally, defendants complain of the following: ''You are instructed that an intent to injure anyone is not a necessary ingredient of wilful misconduct.'' Viewed by itself this does not give a helpful explanation of the element of ''intent'' involved. Viewed in the context in which given the jury, in the midst of adequate definitions of ''wilful misconduct,'' we find no error in it.

(3) *Was there a failure of proof that the owner of the car was responsible for the driver's conduct in this case?*

■ Defendant Chambers was in the employ of the defendant company and with its permission used its car in that capacity. He was its field service representative in all of California north of the northern boundary of Kern County. He had a considerable degree of freedom of decision in performing his duties. His time was pretty much his own in calling upon his employer's customers. On this particular occasion he was en route from the company's San Francisco office (where he had been until noon) to Fresno, to call upon one of the company's customers that evening. His most direct route would have been through Gilroy and Pacheco Pass. This time he went via Camp Roberts to pick up a cousin who wished to be taken to San Francisco airport. Three of the cousin's friends came along. From Camp Roberts he drove north along route 101 to San Lucas, thence through the coast range to Lemoore, thence along Route 41 toward Fresno. The accident occurred about 16 miles out from Lemoore.

The facts that Chambers was an employee of the defendant company and was driving a company car with the company's permission gave rise to an inference that he was acting in the course and scope of his employment (*Westberg* v. *Willde*, 14 Cal. 2d 360, 371 [94 P.2d 590] ; *Rosenberg* v. *Berry*, 101 Cal.App.2d 526, 529-531 [225 P.2d 620] ; *Halbert* v. *Berlinger*,

608

127 Cal.App.2d 6, 17-18 [273 P.2d 274]; Smith v. Johe, 154 Cal.App.2d 508, 510 [316 P.2d 688].)

But for the detour to Camp Roberts, en route to Fresno, we would have no hesitancy in concluding that the evidence supports the jury's implied finding that upon this occasion, Chambers was acting in the course and scope of his employment. The applicable legal principles we find well expressed in Ryan v. Farrell, 208 Cal. 200, 204 [280 P. 945]: "It is the established rule in this jurisdiction that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master."

These principles were expressed in these words in Westberg v. Willde, supra, 14 Cal.2d 360, 372-373, quoting from Kruse v. White Bros., 81 Cal.App. 86, 92 [253 P. 178]: "'A mere deviation from the strict course of his duty does not release the master from liability. In order to have that effect it must be so substantial as to amount to an entire departure. (39 Cor. Jur., p. 1297, Master and Servant, § 1493.) As the rule has been stated, "One does not cease to be acting within the course of the master's employment because his most direct and immediate pursuit of the master's business is subject to necessary, usual or incidental personal acts, nor even by slight and immaterial delays or deflections from the most direct route for a personal or private purpose, the pursuit of the master's business continuing to be the controlling purpose. Such acts, not amounting to a turning aside completely from the master's business so as to be inconsistent with its pursuit, are often only what might be reasonably expected, to which, therefore, the master's assent may be fairly assumed; or they are in many instances the mingling with the pursuit of the master's business some purpose of the servant's own." (Shearman and Redfield on Negligence, 6th ed., p. 362; § 147a.)

"'Whether there has been a deviation so material or substantial as to constitute a complete departure is usually a question of fact. In some cases the deviation may be so marked, and in others so slight relatively, that the court can say that no conclusion other than that the act was or was not a departure could reasonably be supported; while in still others the deviation may be so uncertain in extent and degree

in view of the facts and circumstances as to make the question of what inferences should be drawn from the evidence properly one for the jury . . .' "

These same principles are further expounded in the more recent case of *Loper* v. *Morrison*, 23 Cal.2d 600, 604-607 [145 P.2d 1]. Particularly significant is the statement that in "deciding the case before us the results reached in other decisions are helpful but not necessarily controlling. . . . In each case involving scope of employment all of the relevant circumstances must be considered and weighed in relation to one another." (P. 605 of 23 Cal.2d.)

In the light of these principles, the facts in evidence and the inferences which reasonably may be drawn from those facts support the implied finding that Chambers was acting within the course and scope of his employment. We can not say as a matter of law that he was not so acting.

The defendant criticises an instruction given concerning the legal basis for its liability, if any, upon the ground that the court used the words, "acting within the scope of his authority" instead of the words "acting within the course and scope of his employment." Technically, the latter is the more precise term to use, but it is not conceivable that the jury was misled. Indeed, defendants say that "standing alone this error may not have been prejudicial." We see in it no basis for reversal.

The judgment is affirmed.

Bray, P. J., and Hanson, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.