[Civ. No. 23296. Second Dist., Div. Three. June 11, 1959.]

WALTER THOMAS PALMER et al., Appellants v.
HERBERT AGID, Respondent.

272

Alexander H. Schullman and Boris Raynes for Appellants.

Jarrett & Morgan and William Marshall Morgan for Respondent.

WOOD (Parker), J.—Action for damages for wrongful death of Mrs. Helen Palmer resulting from the collision of a Volkswagen automobile (ranch-wagon type) and a Ford panel truck at an intersection of two streets in Los Angeles. Decedent was riding as a guest in the Volkswagen which was driven by defendant Herbert Agid. Plaintiffs are the husband and the daughter of decedent. The Ford truck was driven

by defendant Ernest Grimes. After all the evidence had been submitted, plaintiffs dismissed the action as to defendant Grimes. In a jury trial, the verdict was for $20,000 against defendant Agid. Agid's motion for judgment notwithstanding the verdict was granted, and his motion for a new trial was granted. Plaintiffs appeal from the judgment notwithstanding the verdict. (Plaintiffs did not appeal from the order granting the motion for a new trial.)

After the action by the Palmers was commenced, Grimes commenced an action against Agid for damages resulting from the collision. The two actions were consolidated for trial. The verdict in the Grimes action was in favor of Grimes, and judgment was entered thereon. No appeal was taken from that judgment.

Appellants ·(husband and daughter of Mrs. Palmer) contend that the evidence was sufficient to support the verdict in their favor, and therefore the court erred in granting the motion of defendant Agid for judgment notwithstanding the verdict.

The collision occurred at the intersection of Olympic Boulevard and Veteran Avenue. Olympic, which is 86 feet wide and is paved, extends easterly and westerly. In the center of that boulevard there is a double white line. On each side of that line there are three marked traffic lanes—three lanes for eastbound traffic and three lanes for westbound traffic. Each lane is approximately 12 feet wide. Veteran Avenue, which is 30 feet wide and is paved, extends northerly and southerly and is divided into two lanes by a single white line—one lane for northbound traffic and one lane for southbound traffic. The white line is 12 feet from the west curb, and 18 feet from the east curb, of Veteran. At the time of the accident there was an official traffic control signal (red, yellow, and green lights) at each of the four corners of the intersection. Speed restriction signs were posted on Olympic and on Veteran in the area. Subject to the provisions of the basic speed law (Veh. Code, § 510), the prima facie speed limit was 35 miles an hour on Olympic and 25 miles an hour on Veteran.

On April 8, 1956, about 6 p. m., Grimes was driving his Ford panel truck in a southerly direction on Veteran, and defendant Agid was driving his Volkswagen in a westerly direction on Olympic. Mrs. Helen Palmer was riding as a guest in Agid's Volkswagen. The vehicles collided in the intersection. The point of impact was about 25 feet south

of the north boundary of the intersection and about 5 feet east of the west boundary of the intersection. After the impact, the truck spun around and stopped near the point of impact. After the impact, the Volkswagen proceeded in a southwesterly direction and went over the south curb of Olympic at a place about 90 feet from the point of impact, knocked a fence down, and stopped against a garage which was approximately 120 feet southwest of the point of impact. Mrs. Palmer was thrown out of the right door of the automobile, at a place approximately 60 feet southwest of the point of impact. She sustained injuries which resulted in her death.

Robert Smith, a witness called by plaintiffs, testified that on April 8, 1956, about 6 p. m., he was driving his automobile in a southerly direction on Veteran; the Ford truck, which was driven by Grimes, was traveling ahead of him, and he (witness) estimated that the truck was traveling 25 miles an hour; when he (witness) was about three-fourths of a block north of the intersection of Veteran and Olympic, he observed that the signal light at the intersection was green for traffic on Veteran; at that time the truck had ''just about'' reached the intersection; the truck struck the middle of the right side of the Volkswagen; at the time of the collision the signal light was green for traffic on Veteran; he (witness) saw the Volkswagen for a fraction of a second before the collision; he did not see it long enough to form an opinion as to its speed.

Rosemary Fritz, a witness called by plaintiffs, testified that on said April 8 she was driving her automobile in a northerly direction on Veteran; when she was about 100 feet south of the intersection of Olympic and Veteran, she observed the Ford truck which was entering the intersection; at that time the signal light was green for traffic on Veteran; thereafter she saw the Volkswagen going west on Olympic; it was 5 to 8 feet east of the Ford when she first saw it; it was traveling ''about 60 or a little more miles an hour''; the front of the Volkswagen hit the front of the truck; at the time of the collision the signal light was green for traffic on Veteran.

Mr. Grimes testified that, as he entered the intersection, his Ford truck was in the west lane on Veteran and was traveling between 15 and 20 miles an hour; at that time, the signal light was green for traffic on Veteran; when he was half a car length within the intersection, he saw the Volkswagen which was 50 to 75 feet east of the intersection, and he estimated that it was traveling at least 60 miles an hour;

the front end of the Volkswagen hit the left front side of his Ford; while he and Agid were in the ambulance, he smelled liquor on Agid's breath.

Defendant Agid testified that when he was approximately 145 feet east of the intersection of Olympic and Veteran, he observed that the signal light on the northwest corner of the intersection was green; at that time, he was traveling 35 miles an hour; soon thereafter he saw the Ford truck, which was on Veteran, between 75 to 100 feet north of the intersection; the Ford was moving slowly and it approached the intersection about the time that Agid approached the intersection; he (Agid) did not decrease his speed; he did not look at the signal light after he first saw the light (approximately 145 feet east of the intersection); at the intersection he took his foot off the accelerator; he did not attempt "to brake" his vehicle "at any time."

Agid testified further that the night before the collision he had one or two drinks at a party; he believed that the drinks were some type of bourbon and possibly some type of ginger ale; after 4 p. m., on the day of the collision, he had "one drink, possibly two," of something which "could have been bourbon."

Officer Korby, called as a witness by plaintiffs, testified that about one and a half hours after the collision, he noted a slight odor of alcohol on Agid's breath; he and Officer Christianson gave Agid a sobriety test; his (witness') conclusion was that Agid was not under the influence of alcohol. Officer Christianson, called as a witness by defendant Agid, testified that he participated in giving the sobriety test to Agid; it was his opinion that Agid was not under the influence of alcohol at the time of the test.

Section 403 of the Vehicle Code provides: "No person who as a guest accepts a ride in any vehicle upon a highway . . . nor any other person, has any right of action for civil damages against the driver of such vehicle . . . on account of personal injury to or the death of such guest during such ride, unless the plaintiff in any such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said driver."

Appellants argue that the evidence was sufficient to prove that the death of Mrs. Palmer resulted from the wilful misconduct and the intoxication of Agid.

A motion for judgment notwithstanding the verdict may be granted only when, disregarding all conflicting evi-

dence, and viewing the evidence in the light most favorable to the moving party, and indulging in all reasonable inferences that may be drawn from the evidence in favor of the moving party, there is no substantial evidence to support the verdict. (See *Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 650 [122 P.2d 576]; *Hargrave* v. *Acme Tool & Tester Co.*, 145 Cal. App.2d 469, 472 [302 P.2d 592]; *Free* v. *Furr*, 140 Cal.App. 2d 378, 381 [295 P.2d 134].)

 A motion for judgment notwithstanding the verdict, which is in the nature of a demurrer to the evidence, is governed by rules which are applicable upon a motion for a nonsuit or a directed verdict. (*Free* v. *Furr*, 140 Cal. App.2d 378, 381 [295 P.2d 134].) Even though a court, under the evidence presented in a case, might be justified in granting a new trial, it would not necessarily be justified, under the same evidence, in granting a motion for judgment notwithstanding the verdict. (*Ibid.*) In the present case, as above stated, the court granted defendant's motion for a new trial. In ruling upon a motion for judgment notwithstanding the verdict, the court is not authorized to determine the weight of the evidence or the credibility of the witnesses. (*Free* v. *Furr, supra*, p. 381.)

In *Allen* v. *Robinson*, 85 Cal.App.2d 617 [193 P.2d 498], wherein the plaintiffs were guests in an automobile, there was evidence that at times when the automobile was being driven at the rate of 45 or 50 or 60 miles an hour, one of the plaintiffs requested the driver (defendant) to slow down; the requests were disregarded; there was a boulevard stop sign at the intersection where the accident occurred; the driver did not apply the brakes or stop before entering the intersection; he entered the intersection at the rate of 35 miles an hour. In that case the verdict and judgment were for the plaintiffs, and the judgment was affirmed on appeal. It was held therein that the evidence supported a conclusion that the conduct of the driver was wilful misconduct. It was said therein, at page 620 (in quoting from another case) : ''Wilful misconduct, within the meaning of this [guest] statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something that should be done under the circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result.'' It was also said therein, at page 621 (in quoting from another case) : ''Wilful misconduct depends upon the

facts of a particular case and necessarily involves deliberate, intentional or *wanton conduct* in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom."

 Under the evidence in the present case, the jury could reasonably have found that within two hours immediately preceding the collision the defendant had two drinks of intoxicating liquor; the speed limit on Olympic was 35 miles an hour and that defendant was traveling 60 miles an hour; when he was 145 feet east of the intersection he saw a traffic signal at the intersection; during the time he was traveling the 145 feet to the intersection, he did not look at the traffic signal; he saw the Ford truck approaching the intersection, but he did not decrease his speed; when he entered the intersection, the traffic signal was green for traffic on Veteran; he drove into the intersection at the rate of 60 miles an hour in disregard of the red signal light which was a signal for him to stop before entering the intersection; he did not apply his brakes at any time; after the collision, his automobile went over the south curb of Olympic, knocked a fence down, and stopped against a garage 120 feet from the place of the collision. The jury could reasonably have found that such conduct on the part of defendant was intentional and with knowledge and appreciation of the fact that danger would likely result therefrom. In view of such combination of circumstances, which included drinking intoxicating liquor, driving into the intersection at 60 miles an hour against the red signal, and disregarding nearby approaching traffic, it cannot be said as a matter of law that such driving was not wilful misconduct. There was substantial evidence to support a finding that the conduct of defendant was wilful misconduct. The court erred in granting the motion for judgment notwithstanding the verdict.

 Defendant Agid asserts that the verdict for plaintiffs is inconsistent with the verdict for Grimes in that the verdict for plaintiffs "characterizes" the conduct of Agid as wilful misconduct, and the verdict for Grimes characterizes the conduct of Agid as negligence. The two actions were consolidated for trial but the issues in the actions remained separate and different issues. The issue in the Palmer action was whether Agid's driving constituted wilful misconduct with respect to the guest who was in his vehicle. The issue in the Grimes action was whether Agid's driving constituted

negligence with respect to a person who was driving another vehicle. The verdict in the Grimes action determining that there was negligence on the part of Agid with respect to the driver of the other vehicle did not signify that Agid's driving was not wilful misconduct with respect to the guest in Agid's vehicle. The verdict in each action was a determination of the issue in that particular action and did not affect the validity of the verdict or judgment in the other action.

In view of the above conclusion regarding wilful misconduct, it is not necessary to determine other contentions on appeal.

As above stated, plaintiffs herein did not appeal from the order granting defendant's motion for a new trial. Section 629 of the Code of Civil Procedure provides, in part, that if the court grants a motion for judgment notwithstanding the verdict and also grants a motion for a new trial, the order granting a new trial shall be effective only if the order granting the motion for judgment notwithstanding the verdict is reversed and the order granting a new trial is not appealed from.

The judgment (notwithstanding the verdict) is reversed.

Vallée, J., concurred.

Shinn, P. J., concurred in the judgment.