[Civ. No. 28384. Second Dist., Div. Two. May 24, 1965.]

MRS. JOHN VIRGIL PELLETTI et al., Plaintiffs and Appellants, v. ANTHONY MUNOZ MEMBRILA, Defendant and Respondent.

608

Kenny, Morris & Ibanez, Paul Major and John R. Crowe, for Plaintiffs and Appellants.

Early, Maslach, Foran & Williams and Kenneth H. Wechsler for Defendant and Respondent.

FLEMING, J.—Defendant, after 12 drinks at four different bars, at 1:30 in the morning, driving his automobile 35 miles an hour on Santa Monica Boulevard in the company of a female companion he had just met, struck and killed a pedestrian in the middle of the block of a well-lighted street with crosswalks. Defendant did not remain at the scene of the accident, but after leaving 116 feet of skid marks continued on his way and only returned 20 minutes later at the direction of a witness to the accident who had followed him.

*Question*: *In a suit for wrongful death should the issue of wilful misconduct of defendant in the operation of his motor vehicle have been submitted to the jury in order to permit plaintiffs to counter the defense of contributory negligence?*

*Answer*: *Yes. There was sufficient evidence of wilful misconduct by the driver in the operation of his motor vehicle to submit that issue to the jury.*

The significance of the distinction between wilful misconduct and negligence as it relates to this case lies in the defense of contributory negligence. ■ Proof of wilful misconduct allows plaintiff to recover his damages even though he himself has been contributorily negligent. (Rest., Torts, § 482.) ■ On the other hand, proof of no greater fault than negligent conduct is an insufficient basis for recovery of damages if plaintiff himself has been negligent. (Rest., Torts, § 467.) Since contributory negligence was established in this case, the nonsuit on the charge of wilful misconduct resulted in a defense verdict. Plaintiffs argue there was sufficient evidence of wilful misconduct to go to the jury. Defendant argues that his conduct was no worse than negligent, and therefore the nonsuit on wilful misconduct was proper. Thus, the principal issue on appeal involves an analysis of the tort of wilful misconduct and the elements which have served to distinguish it from negligent conduct.[1]

Our starting point is the basic dichotomy in the law of torts between intended torts and accidental torts. ■ Contributory negligence is no defense to an intended tort. (2 Harper and James on Torts, p. 1211.) Wilful misconduct was initially classified as conduct which was intended, as the language used to describe it suggests. The original idea of wilful misconduct covered conduct which was intended, deliberate, conscious, planned, calculated. (*Meek* v. *Fowler*, 3 Cal.2d 420, 425-426 [45 P.2d 194].) Wilful misconduct was considered to be conduct which reflected a specific state of mind, either willing to inflict injury or grossly indifferent to the consequences of extremely dangerous conduct, such as firing a rifle in a crowded city park, drag-strip racing on a freeway, or throwing heavy furniture from a hotel window onto a crowded

[1]The issue of wilful misconduct was sufficiently set forth in the pretrial conference order, which incorporated the statements of contentions of the parties, to cover all facets of defendant's operation of his motor vehicle, including speed, intoxication, and improper lookout.

street. Each of these hypothetical acts reflects a callous state of mind willing to cause injury to others.

But in applying a rule which imposes liability for conduct because of specific evil intent, when we leave conduct which is demonstrably antisocial and move into more debatable ground, we face the problem of proof of the actor's bad state of mind. If by word or gesture the actor has indicated that he intends the consequences of his conduct, this determination becomes relatively easy. However, such proof is rarely available. (Prosser, Law of Torts (3d ed.), p. 189.) Do we then abandon attempts to prove wilful misconduct because the actor has not articulated his evil intent? Obviously not, any more than we do in the criminal law. There, as here, we have no difficulty in reaching the actor's state of mind through the medium of his actual conduct. (Pen. Code, § 21; Code Civ. Proc., §§ 1962, subd. 1, 1963, subd. 2.) Even when we hold that it is a requirement of the tort of wilful misconduct that the actor's bad state of mind be determined in each case, thereby insisting on a subjective standard of proof, we have no difficulty in concluding that aggravated misconduct usually reflects a bad state of mind, and we are willing to infer the presence of the latter from the existence of the former.

The next development in tort liability for wilful misconduct usually arises out of an evaluation of the effect of such conduct on the victim. When aggravated misconduct is looked at from the point of view of the injured party we see it makes little difference to the victim what the state of mind of the actor was and whether the consequences of his misconduct resulted from a bad state of mind or from blundering incompetence. In either case the victim has suffered the same loss. Accordingly, the law tends to take a further step and declare that in cases of aggravated misconduct the bad state of mind of the actor is presumed. The actor's conduct is formally characterized as malicious, wanton, or wilful, and it then becomes largely immaterial that the actor's motives in fact may have been good. Thus with the help of a legal fiction, that is to say the assumption that aggravated misconduct was intended, the law arrives at an objective standard of conduct under which it is presumed in certain types of misconduct that the actor's intentions were bad, i.e. wilful. (*Van Fleet* v. *Heyler*, 51 Cal.App.2d 719, 727-730 [125 P.2d 586].)

In the final stage of this transformation we tend to dispense with the legal fiction and directly recognize the change in the law which minimizes the actor's evil intent as an element in the tort of wilful misconduct—which may now be proved by

aggravated misconduct alone. If conduct is sufficiently lacking in consideration for the rights of others, reckless, heedless to an extreme, and indifferent to the consequences it may impose, then, regardless of the actual state of mind of the actor and his actual concern for the rights of others, we call it wilful misconduct, and apply to it the consequences and legal rules which we use in the field of intended torts. (*Levizon* v. *Harrison*, 198 Cal.App.2d 274, 279-281 [18 Cal. Rptr. 284].) The rule is expressed in Restatement of Torts, section 500(c): ''In order that the actor's conduct may be reckless, it is not necessary that he himself recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament or to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct.'' The rule has been summarized by Holmes: ''The standard applied is external, and the words malice, intent and negligence, as used in this connection, refer to an external standard. If the manifest probability of harm is very great, and the harm follows, we say that it is done maliciously or intentionally; if not so great, but still considerable, we say that the harm is done negligently; if there is no apparent danger, we call it mischance.'' (Selected Essays on the Law of Torts, p. 162.)

 To sum up, when conduct falls sufficiently below the acceptable norm to become grossly deficient, we characterize it as imbued with a bad intent which we call wilful misconduct. We attribute a malicious state of mind to the actor irrespective of any actual specific intent. But if specific proof of the wanton state of mind of the actor is also produced, then a dual case has been made for plaintiff, who has the advantage of the presumption which follows from aggravated misconduct as well as specific evidence from which the presence of malicious intent may be inferred.

 In the case at bench the evidence was sufficient to support the charge of wilful misconduct on both grounds. Defendant's conduct contained the following elements: (1) intoxication; (2) speed excessive for the time and place and condition of the driver, as indicated by the testimony on swerving and by 116 feet of skid marks; (3) gross inattentiveness or gross incapacity in not seeing a pedestrian directly under a street light until 35 feet away; (4) flight from the scene, as direct evidence of defendant's indifference to the

point of recklessness to the welfare of others. The concatenation of these factors provided sufficient basis to submit the issue of wilful misconduct to the jury. (*Palmer* v. *Agid,* 171 Cal.App.2d 271, 277 [340 P.2d 303] ; *Fuller* v. *Chambers,* 169 Cal.App.2d 602, 606 [337 P.2d 848] ; 142 Cal.App.2d 377, 380 [298 P.2d 125] ; *Hallman* v. *Richards,* 123 Cal.App.2d 274, 280-282 [266 P.2d 812] ; *Falls* v. *Mortensen* (1956) 207 Ore. 130 [295 P.2d 182].)

It has been said that intoxication by itself is insufficient evidence to support a charge of wilful fisconduct. (*Gombos* v. *Ashe,* 158 Cal.App.2d 517 [322 P.2d 933].) It is, of course, possible for an intoxicated person to operate a motor vehicle without reckless abandon, although, unfortunately, too many times human experience is to the contrary. In considering the cases which discuss intoxication we find that, procedurally, most of them are in the criminal field, where the prosecution is required to establish the charge beyond a reasonable doubt. (*People* v. *Schumacher,* 194 Cal.App.2d 335 [14 Cal.Rptr. 924] ; *People* v. *Clenney,* 165 Cal.App.2d 241 [331 P.2d 696].) Here we are dealing with a civil case in which issues are resolved by a preponderance of the evidence, otherwise known as a tipping of the scales. Substantively, the present case does not depend upon intoxication alone, but on intoxication combined with other factors, which added together support an inference that defendant's misconduct falls within the category described as flirting with danger and thereby acquires the attribute of wilfulness. (*Parsons* v. *Fuller,* 8 Cal.2d 463, 468 [66 P.2d 430].) ■■ When several elements of misconduct, including intoxication, are present, the sum of these elements may add up to wilful misconduct even though no single element alone might suffice. (*Hallman* v. *Richards,* 123 Cal.App.2d 274, 280-282 [266 P.2d 812] ; *Fuller* v. *Chambers,* 142 Cal.App.2d 377, 380 [298 P.2d 125] ; 169 Cal.App.2d 602, 605, 606 [337 P.2d 848] ; *Palmer* v. *Agid,* 171 Cal.App.2d 271, 277 [340 P.2d 303].) In the *Palmer* case the court said, "In view of such combination of circumstances, which included drinking intoxicating liquor, driving into the intersection at 60 miles an hour against the red signal, and disregarding nearby approaching traffic, it cannot be said as a matter of law that such driving was not wilful misconduct. There was substantial evidence to support a finding that the conduct of defendant was wilful misconduct. The court erred in granting the motion for judgment notwithstanding the verdict."

Finally, in the present case, there is the aggravated factor of hit-and-run driving, the grossest type of misconduct, which

in our view provides direct evidence of the wanton state of mind of the defendant at the time of the accident and specific proof of his willingness to expose others to the probability of injury.

"Evidence of the existence of a particular condition, relationship, or status . . . after an act in question is admissible to indicate the existence of the same status, condition, or relationship at the time of the act." (*Blank* v. *Coffin*, 20 Cal.2d 457, 463 [126 P.2d 868]; *Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 362 [184 P. 672, 12 A.L.R. 1007].) An inference that a state of affairs existed at a certain time may be reinforced by evidence that it continued to exist at a subsequent time. (2 Wigmore (3d ed.) § 437.) When defendant ran from the scene of the accident, he was performing a wanton act which gave specific proof of a state of mind of conscious indifference to the consequences of his conduct during the evening.[2] This wanton state of mind after the accident is a factor which the jury could have considered as evidence of defendant's wanton state of mind at the time of the impact, i.e., that a single continuous state of mind existed throughout.

It has been said that the existence of wilful misconduct is a question of fact. (*Reuther* v. *Viall,* 62 Cal.2d 470 [42 Cal.Rptr. 456, 398 P.2d 792].) The facts of this case are certainly more aggravated than the misconduct held wilful in *Reuther* v. *Viall, supra* (driver took eyes off the road to pick up cigarette lighter); *Meyer* v. *Blackman,* 59 Cal.2d 668 [31 Cal.Rptr. 36, 381 P.2d 916] (excessive speed and running a red light); *Goncalves* v. *Los Banos Mining Co.,* 58 Cal.2d 916 [26 Cal.Rptr. 769, 376 P.2d 833] (running a stop sign with opposing traffic in full view despite warning of passenger). In our view the evidence here was sufficiently persuasive to present the issue of wilful misconduct to the jury.

The judgment is reversed.

Roth, P. J., and Herndon, J. concurred.

A petition for a rehearing was denied June 16, 1965, and the judgment was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied July 21, 1965.

---

[2]This is not inconsistent with the jury's finding on Count III of the amended complaint. Count III alleged that defendant's failure to render emergency aid *reduced decedent's chance for survival.* Expert testimony established that decedent would have died regardless of care.