**LINEAS AEREAS PARAGUAYAS (LAP)**
and Aidee M. Gonzales Navero Jara,
Individually, etc., et al.

v.

**FAIRCHILD HILLER CORPORATION.**

Civ. No. 72–479–HM.

United States District Court,
D. Maryland.

Sept. 22, 1975.

Harry H. Lipsig, Pamfil A. Riposanu, Jack Steinman, New York City, and Harold Buchman, Baltimore, Md., for plaintiffs.

John H. Mudd, and Charles E. Iliff, Jr., Baltimore, Md., for defendant.

HERBERT F. MURRAY, District Judge.

In this case, the plaintiff Lineas Aereas Paraguayas (LAP, the Paraguayan airline) and several individual plaintiffs seek damages from the defendant, Fairchild Hiller Corporation, as a result of the crash of an airplane owned by the defendant during a demonstration flight at General Stroessner International Airport, Asuncion, Paraguay, on May 8, 1969. The sole issue herein is what Paraguayan law is to be applied to this case to determine liability. The plaintiffs contend that the general Paraguayan Civil Code is to apply. The defendant

relies on the Aeronautic Code of Paraguay, a more specific code that delineates the rights and liabilities arising from the field of aviation. The Court finds for the defendant and holds that the Aeronautic Code of Paraguay, rather than the general Civil Code, is to be applied to the facts of this case.

## STATEMENT OF FACTS

The parties stipulated to the existence of certain facts in the pretrial order, and this Statement of Facts is derived from that stipulation. As noted above, this case arises from an airplane crash at General Stroessner International Airport, Asuncion, Paraguay, on May 8, 1969. The accident involved a Fairchild Turbo-Porter, a single-engine airplane of the S.T.O.L. type, connoting its short takeoff and landing capability. In attempting to take off from the airport, the Turbo-Porter collided with a parked Convair airliner, allegedly belonging to the plaintiff LAP. As a result of the collision and ensuing fire, two Convairs were damaged, and three occupants of the Turbo-Porter, including the pilot, were killed. A surviving passenger was injured by the crash and fire, and a man on the ground received burns while attempting to rescue the victims of the crash. As a result of the accident, claims are asserted arising from the deaths of Dr. Migone and General Jara, two of the passengers, for personal injury to the surviving passenger, General Rodriguez, and for injury to Sergeant Leon who attempted the rescue.

The aircraft was in Paraguay on loan for demonstrations from Fairchild to Aircom, an Argentine corporation and independent distributor of Fairchild aircraft in various South American countries. It had been received by Aircom from a distributor in Brazil after completion of demonstrations there. On the day of the crash, the plane was flown first in a solo demonstration flight at the airport in Asuncion. The pilot then invited the spectators, including the President of Paraguay, to board the air-

plane for a demonstration flight. His invitation was accepted by General Jara, Commander of the Paraguayan Air Force, General Rodriguez, Commander of the Cavalry, and Dr. Migone, a Paraguayan physician. They paid no fare for the flight.

The pilot applied power and the Turbo-Porter began its takeoff roll. After proceeding some distance, the plane turned left and ran out of the takeoff area to a position where several airliners were parked. It collided with a Convair. Soon after impact, the Turbo-Porter was engulfed in flames. The only passenger to escape the crash and fire was General Rodriguez, one of the plaintiffs.

### The Paraguayan Codes

The issue in this case is whether the general Civil Code of Paraguay is to apply to the above-stipulated facts, as the plaintiffs contend, or whether the Aeronautic Code of Paraguay applies, as the defendant contends. It is useful to begin the discussion of this issue by setting forth the relevant provisions of both Codes.

The three sections of the Civil Code proffered by the plaintiffs are Articles 1109, 1113, and 1133. They read as follows:

1109. Anyone who carries out an act, which by virtue of his fault or negligence, causes damages to another, is obligated to make compensation therefor. This obligation is governed by the same provisions which apply to civil law delects.

1113. The obligation of one who has caused an injury shall extend to the injuries caused by those [persons] who are dependent upon him, or by the objects of which he makes use, or which he has in his custody.

1133. When an inanimate object causes injury to someone, its owner shall respond in damages, if he is unable to prove that there was no fault on his part, as in the following cases: Total or partial collapse of buildings, or of works in general; falls of trees

brought about by ordinary causes; excessive smoke from an oven, chimney, etc.

The relevant provisions of the Paraguayan Aeronautic Code relied on by the defendant are as follows:

Art. 130. In transportation carried out by private parties on the basis of friendship or courtesy, the liability shall be limited to damages arising from acts or omissions of the carrier or its employees, with the intent to cause damages, or with recklessness and knowledge that it probably would cause damage.

The defendant argues that Article 130 governs the claims of the three passengers on board the demonstration flight, Dr. Migone and General Jara, who were killed, and General Rodriguez, who was injured. It also argues that the provisions of Chapter II of Title VIII of the Aeronautic Code apply to the claims of LAP and Leon. LAP claims damages to two of its parked aircraft and Leon claims personal injury in his attempts to rescue the crash victims. Article 118 of Chapter II provides:

Art. 118(1) Persons on the ground who suffer damages are entitled to compensation therefor by merely proving that the damages were caused by an airplane in flight, or by person or object which has fallen from same. However, there shall be no right to compensation if the damages are not a direct result of the event which originated them, or if they are attributable to the mere passage of the airplane through the air space in conformity with the applicable traffic regulations;

(2) For purposes of the present Chapter, an airplane is considered to be in flight from the moment in which the moving force is applied for takeoff until it completes its landing run.

It is apparent that the burden of proof differs greatly depending on which Code is applied to the facts. Under the Civil Code, the defendant has the burden of proving that there was no fault on his

part. On the other hand, the Aeronautic Code requires the plaintiff to prove that the defendant acted with the intent to cause damages, or with recklessness and knowledge that it probably would cause damage. Thus the decision in this case is critical to the ultimate determination of the defendant's liability.

### Principles of Code Construction

■ Paraguay is a "code" state and has therefore enacted a system of "positive" law. The hierarchy of that legal system includes a constitution, treaties, codes and rules. Legal rights and relationships are governed primarily by these codes which provide rules for general and also for more specific situations. The codes, rather than cases, are the basic body of jurisprudence governing issues presented to a court.

The codes can be divided into two basic types, the General Codes and the Special Codes. It was stated by one of the plaintiffs' experts, Dr. Rodriguez:

> Common Law [The Civil Code] in Paraguay is written law which governs all the cases which are not specifically regulated by a special law. [Feb. Tr. Page 113]

■ In applying the various codes, one begins with the basic principle that the more specific codes should first be consulted to determine their applicability before looking to the general codes. Every effort should be made to resolve an issue by application of a special law if the issue arises from the area of activity contemplated by that law.

The Court agrees with the defendant's contention that the Aeronautic Code is a special law and should be examined to determine if it applies to the instant fact situation before resort is made to the Civil Code. As one of the defendant's experts stated:

> I think that when a case is presented, and specifically a situation originating in aeronautical activity, it is necessary to resort to first, and above all, to the Special Laws in the field—in this case,

the Aeronautical Code. . . . [Faidutti, Jul. Tr. Page 177]

■■ The plaintiffs contended that "special law" and "exceptional law" are similar terms and that, therefore, the Aeronautic Code should be strictly construed. "Exceptional law" involves laws which are exceptions to normal legal schemes and are to be restrictively applied. The Court does not agree that the Aeronautic Code is such an "exceptional law." Therefore, its first inquiry will be whether or not the stipulated facts evidence a situation which comes within the terms of the Aeronautic Code.

### The Intent of the Aeronautic Code

Ascertainment of the intent of the Aeronautic Code is important to deciding whether or not the Code applies to the situation at bar. Article 2 of Title I makes it clear that the Code is intended to govern all aspects of aviation activity:

> Art. 2. The legal relations arising from air navigation shall be governed by the provisions of the present Code, the treaties and conventions with foreign nations, and such regulations as may be promulgated.

As one of the defendant's experts, Dr. Faidutti, stated:

> In my estimation the Paraguayan Aeronautical Code . . . is a complete series of norms which comprehend all of the activities related to aviation. [Jul. Tr. at Pages 180–81]

In sum, in approaching the arguments made by the parties as to which Code applies, the Court will keep in mind the following two principles. First, a special law should apply over a general law, if possible, and the Aeronautic Code is such a special law. And second, the Aeronautic Code is intended to be a comprehensive coverage of all aspects of aviation law, and every reasonable effort should be made to fit this set of events within the terms of that Code. The plaintiffs must, therefore, present persuasive evidence that the Aeronautic Code does not apply in this case.

### Article 130

■ The Court holds that Article 130 of the Aeronautic Code controls the claims of Dr. Migone, General Jara and General Rodriguez for death and personal injury arising from the crash. More specifically, the Court finds that the instant case involved "transportation carried out by private parties on the basis of friendship or courtesy," as required by Article 130.

According to the fact stipulation, the three individuals concerned boarded the plane for the purpose of receiving a demonstration of the unique capability of that aircraft in transporting persons, while utilizing short takeoffs and landing areas. They did not make any payment for the flight, although one of its ultimate purposes was potential sale of similar aircraft.

Although accepting these facts, the plaintiffs make several arguments in opposition to the application of Art. 130. Their first argument is based on the meaning of the word "transportation" or "transporte" in Spanish. They argue that the word "transporte" has a limited meaning and that the flight involved is not the type of flight included within the meaning. The plaintiffs' experts testified that the term "transportation" implied flight from one airport to another or from an airport to a previously designated point in the air, before returning to the place of takeoff. Because the instant case does not involve another airport or a previously designated point in the air, plaintiffs contend, Article 130 does not apply.

The defendant contends that the Code uses the term "transportation" in its normal and ordinary sense, in the context of the type of activity to which the Code refers. That meaning clearly encompasses the particular facts of the flight in question. Dr. Faidutti's definition of the term seems the more logical in the context of the broad scope of the Aeronautic Code. Dr. Faidutti stated that ". . . the verb to transport refers. to the act of moving a person by air in an airplane. . . ." [Jul. Tr. Page 205] He further stated:

. . . there is no requirement, in order for there to be transportation, to bring a person from one place to another. . . . [Jul. Tr. Pages 206–207]

The plaintiffs' restricted definition of "transportation" does not promote the intent of the Code to cover all areas of aviation activity. The plaintiffs would create a group of exceptions to the Code for those airplane flights which did not involve another airport or a previously designated point in the air. Such exceptions would have to be decided under the general Civil Code. No purpose would be served by so dividing the aviation cases. The Court therefore holds that the term "transportation" or "transporte" includes the flight in question.

The second argument made by the plaintiffs under Article 130 is that the Turbo-Porter demonstration was not on the basis of "friendship or courtesy" as contemplated in Article 130. They argue that the existence of an ultimate commercial objective, the sale of the airplanes, removed the flight from the coverage of this concept, on the basis that the flight had "an economic and not a moral interest. . . ." [Jul. Tr. Page 291]

The Court agrees with the defendant's witness, Dr. Faidutti, that the phrase "friendship or courtesy" is intended to have the same meaning as "gratuitous." In other words, any transportation that is effected without any payment is included within the phrase. Dr. Faidutti stated:

. . . it is sufficient for it to be nonremunerative and on the basis of courtesy, even if there are or exist ulterior commercial motives. [Jul. Tr. Page 214]

Thus, the Turbo-Porter flight demonstration was a flight of "friendship and courtesy," and the instant case comes within the terms of Article 130 that require "transportation carried out by

private parties on the basis of friendship or courtesy."

### Chapter II of Title VIII

■ The Court finds that the provisions of Chapter II of Title VIII of the Aeronautic Code are applicable to the claims of Leon and LAP. Claims by persons on the ground for damages caused by an aircraft in flight are directly controlled by Arts. 118–128 of Chapter II. Both the Convair and Leon were on the ground. The Turbo-Porter was attempting to take off, thus falling within the definition of "in flight" set out in Art. 118. For the purpose of that Article, an airplane is in flight beginning at the point where power is applied for takeoff. Such power had been applied.

First, the Turbo-Porter was "in flight" at the time of the crash within the meaning of Art. 118(2). It was stipulated in the pretrial order that:

At the time of the occurrence above, the Turbo-Porter was in the course of running along the ground at the airport in attempting to take off for an intended demonstration flight. From the time the run along the ground commenced until the time of collision with the Convair CDN, the Turbo-Porter did not leave the ground. [Stip. 7]

Article 118(2) states that an airplane is to be considered "in flight" "from the moment in which the moving force is applied for takeoff until it completes its landing run." It is clear from the fact that the airplane was running along the ground in an attempt to take off that the moving force for takeoff had been applied. It is irrelevant for the purposes of Art. 118(2) that the plane had not yet left the ground.

As to Leon, plaintiffs argue that the Article does not apply because the flight was over when he was injured. However, the Article does not require that the flight continue past the point of injury. As the defendant points out, the plaintiffs' argument would lead to

the conclusion that a flight which is terminated by a crash could not have any compensable effect beyond the immediate time of the crash itself. [Defendant's brief, page 37]

The Court concludes that Chapter II does apply to the claims of Leon and LAP arising from the crash.

### Scope and Policy of the Aeronautic Code

■■ The above conclusions are supported not only by the language of the Aeronautic Code and general principles of Code construction but also by the scope and policy of the Aeronautic Code. As has been noted above, the Code was intended to cover completely any liability issues arising from aircraft operation. The Code contains certain formulae of limitation which reduce or exclude damages with respect to various classes of claimants, various types of losses and potential defendants. The purpose of the limitations is protection of aviation from unlimited financial exposure in order to foster aviation activity and growth.

The plaintiffs' approach directly contradicts the policy behind the limitations. The demonstration flight of the Turbo-Porter was aerial activity directly involved in the furtherance of aeronautical development. The Aeronautical Code was intended to cover such a flight.

### Conclusion

In determining what Paraguayan law is to be applied to the facts of this case, the Court finds that the Aeronautic Code of Paraguay, and not the General Civil Code of Paraguay, is the applicable law. Article 130 controls the claims arising from death or injury to the passengers. Articles 118–128 control the claims by persons on the ground for damages caused by the aircraft in flight.

The determination of the issue of Paraguayan law is the only issue before the Court in this proceeding. It has not been asked to make the ultimate determination of the liability issues and will leave that for any later proceedings.

It is so ordered.