LINEAS AEREAS PARAGUAYAS (LAP) et al., Appellants,

v.

FAIRCHILD HILLER CORPORATION, Appellee.

No. 76–1581.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1977.

Decided June 23, 1977.

Pamfil A. Riposanu, New York City (Harry H. Lipsig, New York City, on brief), for appellants.

Charles E. Iliff, Jr., Baltimore, Md. (John H. Mudd, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellee.

Before WINTER, CRAVEN * and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The sole issue on appeal is whether the district court correctly ruled that the liability of Fairchild Hiller Corp. for an aircraft accident should be determined by applying the Aeronautical Code of Paraguay rather than the Paraguayan Civil Code.[1] We affirm in part, reverse in part, and remand.

Fairchild Hiller furnished a plane designed for short takeoffs and landings to its exclusive distributor in Paraguay for the purpose of sales demonstrations. After the pilot had given a solo flight presentation, he invited the Commander of the Paraguayan Air Force, the Commander of the Cavalry, and a physician for a demonstration flight. They paid no fare.

While taking off, the aircraft collided with a parked plane owned by Lineas Aereas Paraguayas (LAP). The pilot and two passengers were killed, and the third passenger suffered injuries. Also, a soldier on duty at the airport was burned as he attempted to rescue the victims. Two planes owned by LAP were damaged.

The personal representatives of the deceased passengers, the injured persons, and LAP brought these actions, which were subsequently consolidated, against Fairchild for their respective damages. The parties stipulated all relevant facts and agreed that the preliminary question before the district court was whether the Paraguayan Aeronautical Code or the General Civil Code governs these suits. All other aspects of liability were reserved for later proceedings and are not in issue on appeal.

The principles for ascertaining which code should apply in a state governed by civil law, such as Paraguay, were stated succinctly by the district court as follows:

> In applying the various codes, one begins with the basic principle that the more specific codes should first be consulted to determine their applicability before looking to the general codes. Every effort should be made to resolve an issue by application of a special law if the issue arises from the area of activity contemplated by that law. 400 F.Supp. at 119.

In accordance with these precepts, the court initially considered whether the Aeronautical Code, a special law, was applicable to this case. Having concluded that it was, the court found no occasion for ruling on

---

* Judge Craven died before the preparation of this opinion.

1. The district court's opinion is reported as *Lineas Aereas Paraguayas (LAP) v. Fairchild Hiller Corp.*, 400 F.Supp. 116 (D.Md.1975).

the specific provisions of the General Civil Code cited by the claimants.[2] Upon the district court's certification of its order pursuant to 28 U.S.C. § 1292(b), we permitted this interlocutory appeal.

We affirm the district court's ruling that the Aeronautical Code applies both to the soldier's claim for personal injury and to LAP's claim for damages to its parked planes. Article 118(1) of the Code provides for compensation to persons on the ground who suffer damages from the operation of an airplane in flight.[3] Paragraph 2 of this article specifies that "an airplane is considered to be in flight from the moment in which the moving force is applied for take-off until it completes the landing run." The parties stipulated that the Fairchild plane "was in the course of running along the ground at the airport in attempting to take off" when the accident occurred. This stipulation satisfies the Code's definition of flight, and the fact that the plane had not actually left the ground is irrelevant.

The applicability of the Aeronautical Code to the passengers' claims presents a more difficult question. All parties agree that the Fairchild plane was not being operated as a commercial, domestic air carrier within the meaning of the Code. Fairchild, however, asserts that Article 130 of the Code governs the passengers' claims. This article provides:

> In transportation carried out by private parties on the basis of friendship or courtesy, the liability shall be limited to the damages arising from acts or omissions of the carrier or his employees, with the intention to cause damages, or with reck-

lessness and knowledge that it probably would cause damage.

The claimants oppose the application of this article because it would place on them the burden of proving reckless or intentionally harmful conduct. They contend that the article is inapplicable for two reasons: first, because a flight for the purpose of demonstrating a plane to prospective purchasers does not constitute "transportation" within the meaning of the Code; and second, because such a flight is not "carried out . . . on the basis of friendship or courtesy" as these terms are used in the Code.

Paraguayan courts have not dealt with this precise issue, and the parties' expert witnesses differ over the correct interpretation of the Code. The district court adopted the construction suggested by Fairchild's witness and held that the demonstration flight was a species of transportation covered by the Code. It also agreed with this witness that the phrase "friendship or courtesy" is intended to have the same meaning as "gratuitous." Consequently, it adopted the witness's reasoning that any transportation furnished without payment is covered by the phrase "friendship or courtesy" even though there exist ulterior commercial motives. Since the parties stipulated that none of the passengers paid a fare, the district court concluded that Article 130 applies.

We assume, without deciding the point, that a sales demonstration flight may fall within the Code's concept of transportation.[4] Nevertheless, we reverse because we believe the Code was not intended to exonerate a manufacturer whose plane is being

---

2. The sections of the Civil Code on which the claimants rely are set out by the district court at 400 F.Supp. at 118.

3. Article 118(1) provides:
   Persons on the ground who suffer damages are entitled to compensation therefor by merely proving that the damages were caused by an airplane in flight, or by person or object which has fallen from same. However, there shall be no right to compensation if the damages are not a direct result of the event which originated them, or if they are attributable to the mere passage of the air-

plane through the air space in conformity with the applicable traffic regulations.

4. The claimants rely on Article 86 of the Code which states:
   It shall be considered as domestic aerial transportation that which is carried out between two or more points in Paraguayan territory.
   In view of the alternative ground for our decision, we find it unnecessary to determine whether this definition should be applied literally to exclude the demonstration flight from the Code's provisions governing domestic transportation.

demonstrated to a prospective purchaser from all damages except those caused by intentionally harmful or reckless conduct.

■ It is evident that the drafters of the Code did not intend the mere absence of plane fare to be the decisive factor for absolving a private operator of a plane from the consequences of all but his intentionally harmful or reckless acts. Article 129 of the Code, which deals with commercial air carriers, uses the term "gratuitous transportation" to mean the absence of paid fare, but imposes the same liability on such carriers for damages arising from either paid or unpaid transportation.[5] If the drafters had intended to use Article 130 to exonerate all private parties who furnish unpaid transportation from liability for all but intentionally harmful or reckless conduct, it seems that they would again have described such unpaid transportation as "gratuitous transportation." Instead, Article 130 speaks of transportation carried out by private parties on the basis of "friendship or courtesy." The use of this phrase rather than the term "gratuitous transportation" strongly suggests that it is the relationship between the private parties and not the mere absence of remuneration that was intended by the drafters to be the decisive factor in Article 130. Therefore, contrary to the view expressed by Fairchild's witness, we conclude that the drafters of the Code did not intend to equate "gratuitous transportation" with transportation furnished "on the basis of friendship or courtesy" for the purpose of conferring on a private operator the qualified immunity from suit provided by Article 130.

■ Assuming, as we must, that Article 130 has been correctly translated, and giving its words their commonly accepted meaning,[6] we believe that the sales demonstration was not carried out on the basis of friendship or courtesy. The record does not

suggest that the parties were acquainted, let alone friends. Fairchild's distributor did not extend its invitation as a courtesy to the passengers; on the contrary, the evidence discloses that the invitation was based on the desire to demonstrate and sell the plane. The salesman sought a commercial advantage for Fairchild's business.

■ Like Paraguay, some other jurisdictions exonerate a host from the consequences of his simple negligence in the operation of his aircraft when he is extending a favor or courtesy to a guest. *See* Annot., 40 A.L.R.3d 1117 (1971). Such a guest statute, however, will not exonerate the operator of an aircraft from the liability caused by his negligence when he receives some benefit such as anticipated profit for his business. *Halbert v. Berlinger*, 127 Cal. App.2d 6, 273 P.2d 274, 282 (1954). This conclusion is consistent with the well established rule that an automobile dealer is liable to a prospective customer for damages resulting from acts of simple negligence that occur during a sales demonstration. The prospect of the sale is sufficient "compensation" to render the guest statute inapplicable to the customer's claim. *Follansbee v. Benzenberg*, 122 Cal.App.2d 466, 265 P.2d 183, 186 (1954); *Crawford v. Foster*, 110 Cal.App. 81, 293 P. 841, 842–43 (1930); Annot., 59 A.L.R.2d 336, 346 (1958).

Similarly, the claimants' expert witness and a treatise on Aeronautical Law indicate that the immunity conferred by Article 130 from liability for simple negligence does not apply to a business firm that is dealing for profit at arms length with prospective purchasers of aircraft. The claimants' witness testified that transportation furnished by one who has an economic interest, such as the sale of the plane, is not offered on the basis of friendship or courtesy as these terms are used by the Code. The treatise

---

**5.** Article 129 provides:

The provisions of Chapter I of the present Title shall apply to cases involving damages arising from gratuitous transportation provided by an aerial transportation company. Chapter I of Title VIII deals with the contractual liability of a carrier to a paying passenger.

Article 129 is derived from Article 1(1) of the Warsaw Convention [49 U.S.C.A. § 1502].

**6.** Fairchild observed in its brief that the Spanish word "cortesia" and the English word "courtesy" have the same meaning.

states "The gratuitous nature of the transportation must be understood in a broad sense as the absence of remuneration, or the inexistence of profit or gain for the carrier."[7] Here the existence of profit or gain is evident. The flight afforded the distributor an opportunity to demonstrate and perchance to sell Fairchild's product.

Accordingly, we affirm that part of the district court's order which applies the Aeronautical Code to the claims of the soldier and LAP and reverse its judgment applying Article 130 to the passengers' claims.

*Affirmed in part, reversed in part, and remanded.*

---

7. L. Tapia Salinas, La Regulacion Juridica del Transporte Aereo 107 (1953).